IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT M. EPSTEIN,<br><br>      Plaintiff,<br><br>v.<br><br>C.R. BARD, INC.,<br>FUTUREMED INTERVENTIONAL, INC., and<br>CROSSBOW VENTURES, INC.,<br><br>      Defendants. | Civil Action No. 03-CV-12297 (RWZ) |

**MEMORANDUM IN SUPPORT OF FUTUREMED'S
MOTION TO DISMISS EPSTEIN'S COMPLAINT**

 

Michael A. Albert, BBO # 558566
Michael N. Rader, BBO # 646990
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 720-3500

COUNSEL FOR DEFENDANT
FUTUREMED INTERVENTIONAL, INC.

TABLE OF CONTENTS

I.   UNDISPUTED FACTUAL BACKGROUND ................................................................. 1

   A.   The Complaint ................................................................................................. 1

   B.   The Letters Referenced In The Complaint ..................................................... 2

II.  ARGUMENT ............................................................................................................. 3

   A.   Each Of Epstein's Claims Is Time-
        Barred By The Statute Of Limitations ............................................................ 3

   B.   Epstein Lacks Standing To Sue ....................................................................... 5

   C.   The Complaint Does Not Allege Facts Supporting A Claim
        Against Futuremed Upon Which Relief Can Be Granted ............................... 6

        1.   Applicable Standards .............................................................................. 6

        2.   The Fraud Claims .................................................................................... 8

        3.   The Trade Secret Claims ....................................................................... 12

             a.   "Misappropriation" ....................................................................... 12

             b.   "Conversion" ................................................................................. 14

        4.   The Unjust Enrichment Claim .............................................................. 14

        5.   The Chapter 93A Claim ........................................................................ 15

III. CONCLUSION ........................................................................................................ 16

The Plaintiff's complaint against Futuremed should be dismissed for several reasons. First, as indisputably established by documents referenced and relied upon in the complaint, each of Plaintiff's claims against Futuremed is time-barred as a matter of law.

Second, the Plaintiff (Scott M. Epstein) lacks standing to sue because the causes of action articulated in the complaint relate to alleged trade secrets that Epstein himself asserts belong not to Epstein, but (at best) to another entity that is not a party to this suit.

Last, but certainly not least, the complaint is fatally deficient in alleging facts sufficient to state a claim against Futuremed upon which relief can be granted. Indeed, the complaint says next to nothing about *any* conduct of Futuremed, let alone facts amounting to actionable conduct.

## I.    UNDISPUTED FACTUAL BACKGROUND

### A.    The Complaint

In his complaint, Epstein alleges that he developed a catheter having "a rigid proximal end … decreasing in rigidity to a very strong soft flexible radiopaque tip." (Complaint ¶ 1). He complains that, after initially purchasing such "soft tip" catheters from him and re-selling the same on the open market, Defendant Bard "indicated that it was no longer interested" in buying from Epstein, and instead obtained similar products from another supplier. (Id.). This, Epstein alleges, constituted a misappropriation of his trade secrets. (Id. at ¶ 59).

A portion of Epstein's complaint is devoted to the allegation that Bard made misrepresentations (or omissions) to the Food and Drug Administration ("FDA") regarding its "soft tip" catheters. According to the complaint, these alleged misrepresentations were intended to prevent Epstein from discovering that Bard was selling catheters made by another supplier. (Id. at ¶¶ 89-120).[1]

---

[1] Unexplained in the complaint is how any alleged misrepresentation to the FDA would have deceived Epstein.

Tellingly, the complaint says almost nothing about Futuremed. Indeed, Futuremed is mentioned in just six (6) paragraphs of the 136-paragraph document: ¶¶ 4, 38, 39, 41, 42 and 50.

Paragraphs 4 and 42 merely allege that Futuremed is based in Athens, Texas and has a parent company called Crossbow Ventures which is based in West Palm Beach, Florida.[2]

The remaining four paragraphs allege nothing more than an agreement by Futuremed to supply Bard with soft tip catheters when requested by Bard to do so.

The closest the complaint comes to alleging any wrongdoing by Futuremed is to suggest that Futuremed supplied Bard with catheters that happened to be "similar" to Epstein's, after Bard had provided Futuremed with unspecified information about Epstein's catheter (which Bard had already sold on the open market). (Id. at ¶¶ 38-39, 50).

The complaint contains *no* allegation that Futuremed (a) knew it possessed anything of Epstein's; (b) reviewed such material; or (c) used such material in making catheters for Bard.[3]

### B.  The Letters Referenced In The Complaint

The complaint alleges that Epstein notified Bard in "several letters" that Bard was "using Epstein's technology and proprietary information without permission." (Id. at ¶ 51). Because the complaint references and relies upon these letters, the Court may consider them in deciding this motion. Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").

---

[2] As explained in Crossbow's motion to dismiss, this is wrong – Crossbow is *not* Futuremed's parent company

[3] In fact, Bard never conveyed anything proprietary of Epstein's to Futuremed, so Futuremed could not possibly have reviewed or used such information. What is more, Bard rejected Epstein's catheters as sub-par. The last thing Bard wanted was for its new supplier to mimic Epstein's defective products. Although Futuremed would have been free to copy Epstein's publicly-available catheters, it did not. Leave to re-plead would be futile.

Copies of the letters are attached hereto as Exhibits A-E. In several of the letters, Epstein does not even claim to own the intellectual property on which he has now filed suit – he asserts instead that any intellectual property related to the catheters he made for Bard belongs not to him, but to a non-party to this suit – either SME Design, or its successor, Medical Device Labs, Inc. E.g., Exhibit A (alleging that the "technology and concept is the intellectual property of SME Design" and "Medical Device Labs, Inc. is taking over all SME Design efforts"); Exhibit C ("All intellectual property related to" the catheters at issue "are [sic] the property of SME.").

The letters also demonstrate that Epstein was aware of the facts and circumstances underlying this suit at least as early as October 10, 1999. (Exhibits A, B).

## II. ARGUMENT

### A. Each Of Epstein's Claims Is Time-Barred By The Statute Of Limitations.

On October 10, 1999, Epstein sent two letters to Bard managers, in which he expressed "confusion" about the fact that Bard appeared to be marketing catheters similar to those he had previously provided, over a year after Bard had stopped buying from him:

> [I]t has been brought to my attention that Tigertail™ [the catheter at issue] is still available through Bard Urology, which under the circumstances is confusing to me. We have not supplied BUD with the product for about one year and therefore I have to wonder where additional inventory has come form [sic]. This letter is an attempt to ascertain this information because it has been established and is well defined that the BUD Tigertail™ technology and concept is the intellectual property of SME Design. Any second source manufacture utilizing SME Design technology which includes material and process information would have to be licensed form [sic] and approved by SME Design.

(Exhibits A, B).

Thus, at least as early as October 10, 1999, Epstein was aware that Bard had retained an alternative supplier for the catheters at issue – the lynchpin of his claims in this case, and in particular of his claims against Futuremed.

- 3 -

On January 6, 2000, Epstein sent three more letters to Bard executives (Exhibits C, D, E), making more detailed allegations closely paralleling those he now advances in his complaint, and giving Bard 30 days to come to terms or face a lawsuit. Excerpts of these letters follow:

> [I]f a reasonable offer is not <u>presented to me</u> with in [sic] 30 days, I will move forward with legal action…. All intellectual property related to Soft Tip Catheters … <u>are</u> [sic] the **property of SME**, *not* BUD…. We will demand to whom [sic] any trade secrets with in [sic] the scope of our Soft Tip technology were conveyed to [sic]. We will demand to know how many catheters and related devices have been sold to date.

(Exhibit C) (emphasis original).

> The issue is more and more complicated now that my Trade Secrets has [sic] been divulged…. BUD has **30** days to respond with a significant proposal that will address this issue … or this is my last communication and we will end up in court.

(Exhibit D) (emphasis original).

> I hope you can see this through to a speedy resolution. Otherwise I expect BUD to settle this without further incident or we **will** end up in court.

(Exhibit E) (emphasis original).

The statute of limitations applicable to tort claims in Massachusetts is three years, and the statute of limitations applicable to Chapter 93A claims is four years. <u>See</u> Mass. Gen. L. ch. 260 §§ 2A, 5A. These limitations periods "start[] to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury." <u>Bowen v. Eli Lilly & Co.</u>, 557 N.E. 2d 739, 741 (Mass. 1990).

Exhibits A and B establish that, at least as early as October 10, 1999, Epstein was aware that Bard had found an alternative catheter supplier, and thus that "someone may have caused [him] injury." <u>Id.</u> Accordingly, the statute of limitations began to run on Epstein's claims on October 10, 1999. The limitations periods for his tort claims and his Chapter 93A claim expired on October 10, 2002 and October 10, 2003, respectively.

- 4 -

Epstein filed the present suit on October 15, 2003 – over a year after the expiration of the limitations period on his tort claims,[4] and five days after the expiration of the limitations period on his Chapter 93A claim.[5]  Although fraudulent concealment may toll the statute of limitations, see Mass Gen. L. ch. 260 § 12, tolling does *not* apply if the plaintiff has actual knowledge of the facts giving rise to his claim. Demoulas v. Demoulas Super Markets, Inc., 677 N.E. 2d 159, 174 (Mass. 1997).  Epstein's letters establish indisputably that he had such knowledge.

Accordingly, each of Epstein's claims against Futuremed fails to state a claim upon which relief can be granted because it is time-barred, and therefore each should be dismissed as a matter of law. LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998) ("Granting a motion to dismiss based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred.").[6]

### B. Epstein Lacks Standing To Sue.

By his own allegation in letters referenced and relied upon in the complaint, any intellectual property related to the catheters Epstein made for Bard belongs not to him, but, at best, to a non-party to this suit – either SME Design, or its successor, Medical Device Labs, Inc.[7]

According to the October 10, 1999 letters, the "technology and concept is the intellectual property of SME Design." (Exhibits A, B).  Similarly, a January 6, 2000 letter states that the "intellectual property related to" the catheters at issue is "the property of SME." (Exhibit C).

---

[4] This includes, against Futuremed, Counts III (misappropriation of trade secrets), IV (conversion), V (unjust enrichment), VI (misrepresentation), VII (negligent misrepresentation), and VIII (fraudulent concealment).

[5] Count X.

[6] Even if the limitations period began to run with Epstein's Jan. 6, 2000 letters, his tort claims would still be time-barred, leaving just his 93A claim, which should be dismissed for the independent reasons discussed in § II(C)(5).

[7] Nothing herein is intended to concede that either SME Design or Medical Device Labs, Inc. actually own any such rights (indeed, any such rights were extinguished when Epstein sold his catheters on the open market through Bard). The point is that Epstein does not.

Epstein explains that he was the "sole proprietor of SME Design Technology, Inc." (Complaint ¶ 2), a company later taken over by "Medical Device Labs, Inc." (Exhibits A, B).

While it is unclear which, if any, of these two companies now owns the alleged trade secrets described in the complaint (to the extent such trade secrets exist at all), one thing is plain from Epstein's letters – Epstein is *not* the owner. Accordingly, he has no standing to sue for misappropriation of these trade secrets and related claims. Milgrim on Trade Secrets § 15.01(1)(a)(iv) ("Elementary, of course, is proof that plaintiff is the owner of the trade secret."). For this additional reason, the complaint fails to state a claim upon which relief can be granted, and should be dismissed.

### C. The Complaint Does Not Allege Facts Supporting A Claim Against Future med Upon Which Relief Can Be Granted.

This motion may be decided based on the applicable statutes of limitations and Epstein's lack of standing. Should the Court reach the issue, however, it should find that the complaint fails to state facts supporting a claim against Futuremed upon which relief can be granted.

#### 1. Applicable Standards

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, courts "assume the truth of all well-pleaded facts contained in" the complaint. Podiatrist Ass'n, Inc. v. La Cruz Azul De Puerto Rico, 322 F.3d 6, 18 (1st Cir. 2003).

Despite this generous standard, the First Circuit has emphasized that "Rule 12(b)(6) is not entirely a toothless tiger." Id. at 19 (citation omitted). To survive a Rule 12(b)(6) motion to dismiss, the complaint must set forth "factual allegations … respecting each material element necessary to sustain recovery under some actionable legal theory." Id. (citation omitted).[8]

---

[8] See also Assoc. Gen'l Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983) ("It is not … proper to assume that the [plaintiff] can prove facts that it has not alleged.").

As the First Circuit has explained, bald "conclusions" set forth in the complaint are not the same – and do not suffice – as statements of fact:

> It is only when such conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that "conclusions" become "facts" for pleading purposes.

The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).

The policy rationale underlying the First Circuit's insistence that the plaintiff plead *facts* supporting each of its causes of action is straightforward:

> [T]he discovery process is not available where, at the complaint stage, a plaintiff has nothing more than unlikely speculations… *the reason is to protect society from the costs of highly unpromising litigation*.

DM Rsch., Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 56 (1st Cir. 1999) (emphasis added).[9]

Courts "need not credit bald assertions, periphrastic circumlocutions [or] unsubstantiated conclusions." Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990).

In summary, the plaintiff bears the burden to set forth in its complaint *facts* sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Boston & Maine Corp. v. Town of Hampton, 987 F.2d 855, 865 (1st Cir. 1993) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)).

It is well-settled that this rule applies equally to the allegations against each defendant in a multiple defendant action. E.g., Tower v. Leslie-Brown, 167 F. Supp. 2d 399, 403-04 (D. Me. 2001) (dismissing complaint against one of multiple defendants where the complaint provided "no insight on what wrongs Defendant Dolley allegedly has committed against Plaintiffs");

---

[9] A cause of action based on "conclusions" rather than "facts" is automatically suspect. "Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." Id. at 55. See also Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988) ("To permit a plaintiff, on such a skimpy foundation, to drag a defendant past the pleading threshold would be to invite litigation by hunch."), affirming, 678 F. Supp. 939 (D. Mass. 1987) (Zobel, J.).

Goldstein v. Malcolm G. Fries & Assoc., Inc., 72 F. Supp. 2d 620, 627 (E.D. Va. 1999) (granting motion to dismiss; "[I]n multiple defendant cases … circumstances must be stated for each defendant."); Yucyco Ltd. v. Rep. of Slovenia, 984 F. Supp. 209, 219 (S.D.N.Y. 1997) (dismissing complaint against one of multiple defendants where the "pleadings against this defendant are inadequate");  This is particularly true where the complaint alleges fraud. Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990) ("A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient.").

### 2. The Fraud Claims

As noted above, First Circuit pleading standards (under Rule 8) require that the complaint state *facts* (rather than summary conclusions) entitling the plaintiff to relief against *each defendant*. Where fraud is alleged, Rule 9(b) demands more: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

In the First Circuit, this means that the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Suna v. Bailey Corp., 107 F.3d 64, 68 (1st Cir. 1997).[10]

Where a complaint alleging fraud fails to comply with this strict standard of particularity, it should be dismissed. Id. at 71 (where plaintiff's fraud claims "rely fundamentally on such unsupported allegations, the district court properly dismissed these claims for failure to meet Rule 9(b)"); Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996) (affirming dismissal of fraud counts against two defendants where specifics were not provided about their conduct).

---

[10] Even where "state law governs the burden of proving fraud at trial, the procedure for pleading in federal courts in all diversity suits is governed by the special pleading requirements of Federal Rule of Civil Procedure 9(b)." Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985).

As explained above, a complaint must make specific allegations against each defendant. This is all the more true where the claims implicate Rule 9(b). E.g., Sears, 912 F.2d at 893.

In this case, Epstein asserts three Counts against Futuremed that sound in fraud and are therefore subject to the particularity requirements of Rule 9(b): Count VI ("Misrepresentation"); Count VII ("Negligent Misrepresentation"); and Count VIII ("Fraudulent Concealment").

It is black-letter law that "fraudulent concealment" must be pled with particularity. J. Geils Band Employee Ben. Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1255 (1st Cir. 1996) (plaintiff must "plead with particularity the facts giving rise to the fraudulent concealment claim"). The same is true of "misrepresentation." Whelan v. Intergraph Corp., 889 F. Supp. 15, 19-20 (D. Mass. 1995) (dismissing "fraudulent misrepresentation" claim for failing Rule 9(b)).[11]

Finally, this Court has repeatedly held that "negligent misrepresentation" must also be pled with particularity. Sebago, Inc. v. Beazer East, Inc., 18 F. Supp. 2d 70, 95 (D. Mass. 1998) ("Like fraud, a claim of negligent misrepresentation requires plaintiffs to plead reliance with particularity."); Lindner Div. Fund, Inc. v. Ernst & Young, 880 F. Supp. 49, 57 (D. Mass. 1995), citing In re Stratus Comp. Sec. Litig., 1992 WL 73555, *6 (D. Mass. Mar. 27, 1992) (Zobel, J.) ("This district has clearly held that Rule 9(b) applies to claims of negligent misrepresentation."); Mosko v. DeFilippo, 1991 WL 191211 (D. Mass. Sept. 10, 1991) (Zobel, J.) ("negligent misrepresentation" claim dismissed for failure to comply with Rule 9(b)).[12]

---

[11] Massachusetts law recognizes two species of "misrepresentation" claims: "fraudulent misrepresentation" and "negligent misrepresentation." E.g., Craig v. Everett M. Brooks Co., 222 N.E. 2d 752, 753 (Mass. 1967) (fraudulent misrepresentation); Nycal Corp. v. KPMG Peat Marwick, 688 N.E. 2d 1368, 1371 (Mass. 1998) (negligent misrepresentation). Since Count VII is for negligent misrepresentation, one must presume that Count VI, which is captioned just "misrepresentation," actually seeks to state a cause of action for "fraudulent misrepresentation."

[12] Although at least one decision in this District has suggested a contrary conclusion, see City of Worcester v. HCA Management Co., Inc., 1994 WL 123629, *1 (D. Mass Apr. 7, 1994), in this case the issue is moot because Count VII fails to satisfy even the more liberal requirements of Rule 8. Should the Court reach the issue, however, the weight of precedent in this District favors subjecting Count VII to Rule 9(b).

None of Counts VI, VII or VIII allege facts sufficient to survive dismissal under Rule 8, let alone under the heightened pleading standards of Rule 9(b).

Count VI, captioned "misrepresentation," alleges generically that "defendants" made false representations to the FDA regarding Bard's catheter with an intent to defraud Epstein. (Complaint ¶¶ 90-96). Count VI does not attribute any alleged statements to Futuremed. Cf. Sears, 912 F.2d at 893 (rejecting as insufficient under Rule 9(b) a "complaint [that] lumps all the defendants together and does not specify who was involved in what activity"); Swartz v. Schering-Plough Corp., 53 F. Supp. 2d 95, 105 (D. Mass. 1999) (dismissing fraud claims that did "not state *which corporate defendant* in particular made such statements") (emphasis original).

Moreover, nowhere in the complaint does Epstein contend (nor could he) that Futuremed made any statements to the FDA at all. Indeed, the complaint concedes that any such statements (about Bard's catheter) would have been made by Bard. (Complaint ¶ 27).

In short, Count VI fails to allege the essential elements of a misrepresentation claim against Futuremed, namely that Futuremed "made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon." Danca v. Taunton Sav. Bank, 429 N.E. 2d 1129, 1133 (Mass. 1982). Thus, under First Circuit pleading standards, Count VI should be dismissed because it fails to set forth "factual allegations … respecting each material element necessary to sustain recovery." Podiatrist Ass'n, 322 F.3d at 19.

Moreover, Count VI also fails under Rule 9(b) because it does not (1) specify a single statement by Futuremed; (2) identify Futuremed as the speaker of such a statement; (3) state where and when such a statement was made; or (4) explain how such a statement could be considered fraudulent. Suna, 107 F.3d at 68. Count VI indisputably should be dismissed.

- 10 -

The same is true of Count VII, captioned "negligent misrepresentation." Its allegations are virtually identical to those of Count VI except that, in Count VII, the false representations are alleged to have been made to Epstein rather than to the FDA. (Complaint ¶¶ 100-09).

Again, the allegations are phrased generically against "defendants," and do not specify who made allegedly false representations to Epstein. Nowhere in the complaint does Epstein allege that Futuremed *ever* had contact with him of any kind. Indeed, the complaint states that when Epstein contacted Futuremed, "no response was ever received." (Id. at ¶ 42). In short, Futuremed concededly has never made a single representation to Epstein, let alone a false one. Epstein does not make a contrary allegation (and cannot do so in good faith).

Thus, Count VII omits the essential elements of a negligent misrepresentation claim against Futuremed, namely that Futuremed "failed to exercise reasonable care" in supplying "false information for the guidance of others … in their business transactions." Cummings v. HPG Int'l, Inc., 244 F.3d 16, 24 (1st Cir. 2001). Count VII, like Count VI, should be dismissed under general First Circuit pleading standards, as well as for failing (*a fortiori*) the Suna test for compliance with Rule 9(b).

Count VIII, for "fraudulent concealment," fares no better. Once again, the bare bones allegations in this claim are made against "defendants" generally, with no mention of Futuremed. Once again, the gist of the allegations is a misrepresentation to the FDA pertaining to a Bard product, in a submission the complaint concedes (¶ 27) was made by Bard, not by Futuremed.

Count VIII also includes the additional allegation that "Defendants concealed and suppressed material facts as to the use of the Plaintiff's technology, intellectual property and trade secrets to apply for a Patent." (Id. at ¶ 116). Again, however, the complaint concedes elsewhere that the patent was applied for solely by employees of Bard. (Id. at ¶ 56).

In short, Count VIII alleges no conduct whatsoever by Futuremed, let alone a "course of conduct designed to conceal evidence of [] alleged wrongdoing" as required to state a claim for fraudulent concealment. J. Geils Band, 73 F.3d at 1255. Like Counts VI and VII, it should be dismissed for failing general First Circuit pleading standards as well as the heightened pleading requirements of Rule 9(b).

### 3. The Trade Secret Claims

Epstein's allegations of trade secret "misappropriation" (Count III) and "conversion" (Count IV) suffer from several of the same fatal deficiencies as his fraud claims. The allegations are impermissibly general, do not allege any wrongdoing by Futuremed, and do not set forth "factual allegations … respecting each material element necessary to sustain recovery" for trade secret misappropriation or conversion. Podiatrist Ass'n, 322 F.3d at 19.

#### a. "Misappropriation"

Count III of the complaint includes a blanket allegation that "Defendants have obtained Plaintiff's trade secrets pursuant to their meetings and contractual relationships with Plaintiff." (Complaint ¶ 77). Yet the complaint does not (and cannot) allege that Futuremed had a single meeting or any relationship with Epstein. Indeed, when Epstein alleges to have contacted Futuremed, the complaint concedes that "no response was ever received." (Id. at ¶ 42).

As noted above, the closest the complaint comes to alleging any wrongdoing by Futuremed is to suggest that Futuremed supplied Bard with catheters that happened to be "similar" to Epstein's, after Bard had provided Futuremed with unspecified information about Epstein's catheter (which Bard had already sold on the open market). (Id. at ¶¶ 38-39, 50).[13]

---

[13] The sale of Epstein's catheters on the open market destroyed any trade secret that Epstein might have claimed therein. Once again, leave to re-plead would be futile.

The complaint nowhere alleges that Futuremed knew it possessed anything belonging to Epstein[14] – an essential element of a Massachusetts trade secret claim. Mass. Gen. L. ch. 93 § 42 ("Whoever embezzles, steals, or unlawfully takes, carries away, conceals, or copies, or by fraud of by deception obtains, from any person or corporation, *with intent to convert to his own use*, any trade secret … shall be liable in tort to such person or corporation.") (emphasis added).

At most, the facts set forth in the complaint, namely that Bard supplied information to Futuremed (i.e., a request to manufacture a certain type of catheter),[15] after which Futuremed supplied Bard with catheters "similar" to Epstein's, would establish that Futuremed was an innocent recipient of Epstein's information, not subject to liability for trade secret misappropriation. Am. Science & Eng'g, Inc. v. Kelly, 69 F. Supp. 2d 227, 239 (D. Mass. 1999) (finding no likelihood of success on trade secret claim where "even if Dr. Annis *did* misappropriate trade secrets, it does not follow that EG&G knew that this is what he was doing … [making] EG&G … an innocent beneficiary of trade secret information.") (emphasis original); Curtiss-Wright Corp. v. Edel-Brown Tool & Die Co, Inc., 407 N.E. 2d 319, 323 (Mass. 1980) ("[O]ne must have notice of both the fact that the information claimed to be a trade secret is in fact secret and the fact that disclosure by the third person is a breach of duty before one is subject to liability for the use or disclosure of the trade secret.").

Because Count III fails to allege that Futuremed had "intent to convert" Epstein's trade secrets to its own use as required by the statute (or even that Futuremed knew it had access to a trade secret), does not set forth "factual allegations … respecting each material element necessary to sustain recovery," Podiatrist Ass'n, 322 F.3d at 18, and should be dismissed.

---

[14] Nor would there be any good-faith basis for such an allegation.

[15] As noted above, Bard simply requested that Futuremed make a certain type of catheter. It did *not* convey proprietary information of Epstein's to Futuremed.

### b. "Conversion"

Count IV of the complaint, which advances a claim for "conversion" of trade secrets, fares no better than the "misappropriation" of trade secrets claim.

"Under Massachusetts law, the tort of conversion requires the plaintiff to prove that the defendant *intentionally or wrongfully exercised control*, ownership or dominion over *personal property* to which he had no right of possession at the time of the alleged conversion." Cadle Co. v. Schlichtman, 267 F.3d 14, 21 (1st Cir. 2001) (emphasis added).

Count IV fails as a matter of law for at least two reasons. First, as noted above, the complaint does not allege intent by Futuremed to convert anything belonging to Epstein. Second, nowhere does the complaint allege that Futuremed took possession (intentionally or otherwise) of Epstein's "personal property." Indeed, Count IV says precisely the opposite – alleging that the defendants "converted" *intangible* property of Epstein: "technology, trade secrets and intellectual property." (Complaint ¶ 84). Count IV plainly fails to state a claim for conversion under Massachusetts law.

### 4. The Unjust Enrichment Claim

Like the foregoing claims, Count V (for "unjust enrichment") is pled generically against "defendants" – in just two paragraphs (¶¶ 87-88) – without any reference to particular parties, let alone to Futuremed. Count V is therefore fatally vague and should be dismissed. E.g., Tower, 167 F. Supp. 2d at 403-04 (dismissing complaint against one of multiple defendants where complaint "offer[ed] no insight on what wrongs Defendant Dolley allegedly has committed against Plaintiffs"); Goldstein, 72 F. Supp. 2d at 627 (granting motion to dismiss; "[I]n multiple defendant cases … circumstances must be stated for each defendant.").

- 14 -

Count V is so generic that it does not provide the factual predicate to a claim of unjust enrichment against Futuremed, including the essential element that the retention of any "benefit" obtained by Futuremed would be unjust. Brandt v. Wand Partners, 242 F.3d 6, 16 (1st Cir. 2001).

Only a bald *conclusion* is stated, that "Defendants have been unjustly enriched." In the First Circuit, Rule 8 requires facts rather than mere conclusions. The Dartmouth Review, 889 F.2d at 16. Count V fails to state a claim upon which relief can be granted.

### 5.     The Chapter 93A Claim

Epstein's Chapter 93A claim (Count X) is likewise impermissibly vague as to its underlying facts, and lacks an identification of allegedly wrongful conduct by particular parties – with *nothing* stated about Futuremed.

What is more, the Chapter 93A claim fails for the additional and independent reason that it does not allege, as required by statute, that the circumstances giving rise to this claim occurred "primarily and substantially in Massachusetts." Mass. Gen. L. ch. 93A § 11.

Count X includes only a generalized allegation the "defendants" (plural) were at all relevant times "engaged in commerce" within Massachusetts, but does not allege that any conduct by Futuremed related in any way to Plaintiff occurred within the Commonwealth, let alone that the events underlying Epstein's complaint occurred here.

Indeed, there would be no good faith basis for such an allegation. The complaint concedes that Futuremed is located in Athens, Texas and Bard is located in Murray Hill, New Jersey. Accordingly, any relevant activity between these two entities (such as the alleged transfer of trade secret information which is the lynchpin of Epstein's complaint) would have occurred in Texas or New Jersey, or perhaps both – but certainly not in Massachusetts.

Because the complaint does not (indeed, cannot) allege that relevant events occurred primarily and substantially in Massachusetts, it should be dismissed. Reicher, D.P.M. v. Berkshire Life Ins. Co. of Am., 2002 U.S. Dist. Lexis 20763 (D. Mass. Oct. 29, 2002) (Zobel, J.) (granting motion to dismiss Chapter 93A claim based on events that did not occur primarily and substantially in Massachusetts); Brown v. Armstrong, 957 F. Supp. 1293, 1296 (D. Mass. 1997) (court "granted Defendants' motion to dismiss the 93A claim on the ground that the activities alleged in the complaint did not occur primarily and substantially in Massachusetts"); Am. Mgmt. Svcs., Inc. v. George S. May Int'l Co., 933 F. Supp. 64, 68 (D. Mass. 1996) (granting motion to dismiss where "there is no conceivable set of facts, reasonably consistent with the complaint, which would constitute violations of Chapter 93A taking place primarily and substantially in Massachusetts").

### III.  CONCLUSION

For the aforementioned reasons, Futuremed's Motion to Dismiss should be granted.

Respectfully submitted,

FUTUREMED INTERVENTIONAL, INC.,

By its counsel,

Dated: December 29, 2003

/s/ Michael A. Albert
Michael A. Albert, BBO # 558566
Michael N. Rader, BBO # 646990
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 720-3500

- 17 -

## CERTIFICATE OF SERVICE

      I hereby certify that a true copy of the Memorandum in Support of Futuremed's Motion to Dismiss Epstein's Complaint was served upon the following attorneys of record on December 29, 2003 by first-class, regular mail:

Andrew Good, Esq.
Good & Cormier
83 Atlantic Avenue
Boston, MA  02110

Samuel D. Levy, Esq.
Wuersch & Gering, LLP
11 Hanover Square, 19th Floor
New York, NY  10005

                                                                                    /s/ Michael A. Albert
                                                                                    Michael A. Albert