IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SCOTT M. EPSTEIN,

       Plaintiff,

v.

C.R. BARD, INC.,
FUTUREMED INTERVENTIONAL, INC., and
CROSSBOW VENTURES, INC.,

       Defendants.

Civil Action No. 03-CV-12297 (RWZ)

**CROSSBOW VENTURES INC.'S
MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO DISMISS THE VERIFIED COMPLAINT</u>**

Michael A. Albert, BBO # 558566
Michael N. Rader, BBO # 646990
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
617-720-3500

Of Counsel:    Samuel D. Levy (SDL 9271)
             Admission *pro hac vice* pending
           Wuersch & Gering LLP
           11 Hanover Square, 19th Floor
           New York, New York 10005
           212-509-5050

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 1

ARGUMENT .................................................................................................................. 3

Point I

THE VERIFIED COMPLAINT SHOULD BE DISMISSED
BECAUSE THE ALLEGATIONS DO NOT STATE A CLAIM
AGAINST CROSSBOW AND ARE OTHERWISE TIME-BARRED ...................................... 3

      A.    The Standard for F.R.C.P. 12(b)(6) Motions. ................................................ 3

      B.    Considering Materials Beyond the Complaint in a Rule 12(b)(6) Motion. ........................... 4

      C.    The Claims Against Crossbow are Time-Barred ................................................ 5

      D.    Plaintiffs Have Not Pleaded or Stated a Claim Against Crossbow. ...................... 6

Point II

CROSSBOW IS NOT VICARIOUSLY LIABLE
FOR THE TORT CLAIMS OF PLAINTIFF ...................................................................... 9

      A.    Epstein Cannot Maintain his Misappropriation Claim Against Crossbow ........................... 9

      B.    Epstein Cannot Maintain his Conversion Claim Against Crossbow ................................. 10

      C.    Epstein Cannot Maintain his Unjust Enrichment Claim Against Crossbow ..................... 12

      D.    Epstein Cannot Maintain his Misrepresentation Claims Against Crossbow ..................... 12

      E.    Epstein Cannot Maintain his Fraudulent Concealment Claim Against Crossbow .............. 15

      F.    Epstein Cannot Maintain his Claim for Violation of M.G.L. 93A §§ 2, 11 ........................ 16

CONCLUSION ............................................................................................................. 18

## PRELIMINARY STATEMENT

Crossbow Ventures Inc., named in this action as Crossbow Ventures, Inc. ("Crossbow") respectfully submits this Memorandum of Law in support of its motion to dismiss the October 14, 2003 Verified Complaint originally filed in the Superior Court of the Commonwealth of Massachusetts, Business Litigation Session, but removed to this Court on November 18, 2003.

Crossbow's motion should be granted because the only allegation in the 27 page Verified Complaint against Crossbow, a Florida investment advisor, is that it is the "parent" of co-defendant, Futuremed Interventional, Inc. ("Futuremed"). This allegation is wrong, as Crossbow is not the parent of Futuremed, but an investment advisor to a limited partnership which is a passive investor in Futuremed. Crossbow did not control, participate in, direct, or become involved in any activities of Futuremed.

Since none of the allegations in the Verified Complaint were timely brought against Crossbow, nor do they directly implicate the conduct or representations of Crossbow, which had nothing to do with the complained-of activities, the claims against Crossbow should be dismissed. In addition, since plaintiff failed to allege any facts supporting the tort claims against Crossbow, the claims against Crossbow should be dismissed.

## STATEMENT OF FACTS

This action concerns a claim by plaintiff Scott M. Epstein ("Epstein") that defendant C.R. Bard, Inc. ("Bard") misappropriated a design or invention by Epstein pertaining to urethral catheters. (See Verified Complaint). While the allegations against Bard are sweeping, covering years of communications and dealings between the two, the factual allegations against Crossbow are limited to one isolated statement:

> 42.  *Futuremed is owned by a parent company, Crossbow Ventures, Northbridge Center, 515 Flagner Drive, Suite 1200, West Palm Beach, Florida.  Futuremed was notified, however, no response was ever received by Epstein.*

(See Verified Complaint).

Epstein asserts seven claims against Crossbow for: misappropriation of trade secrets (Count III); conversion (Count IV); unjust enrichment (Count V); misrepresentation (Count VI); negligent misrepresentation (Count VII); fraudulent concealment (Count VIII); and violation of M.G.L. Ch. 93A §§ 2, 11 (Count X).  Id.  But none of the Counts assert a single act of wrongdoing by Crossbow.  Id.  Instead, the only thing Crossbow is alleged to have done in the entire Verified Complaint is to act as the "parent" of Futuremed, an allegation that is false.

Crossbow is a private investment advisor to a limited partnership which is an investor in Futuremed.  Crossbow is not Futuremed's parent.  (See Futuremed Interventional, Inc. May 18, 2001 Series A Convertible Preferred Stock Certificate (the "Stock Certificate"), annexed to the affidavit of Stephen J. Warner, President of Crossbow Ventures Inc. ("Warner Affdvt.") as Ex. 1).[1]  There is no business or other relationship between Epstein and Crossbow, and no relationship between Crossbow and Bard or Futuremed, except that Crossbow is an advisor to a limited partnership which invested in Futuremed.  (See Warner Affdvt. ¶¶ 2-5; Verified Complaint).

There is no allegation that Crossbow controlled Futuremed, influenced its actions, participated in Futuremed's businesses, or had anything to do with Futuremed's activities.  (See Verified Complaint).  There also is no allegation that Crossbow even knew anything about the

---

[1]  Crossbow Ventures Inc., the defendant, does not even hold the Stock Certificate.  It is held by Crossbow Venture Partners LP, formerly known as Alpine Venture Capital Partners LP.  (See the Stock Certificate, Warner Affdvt. Ex. 1; Warner Affdvt. ¶ 2).  Thus, even if a Futuremed investor is alleged to have participated in the events giving rise to this action, Epstein sued the wrong party.

conduct alleged in the Verified Complaint.  Id.  There are no such allegations because Crossbow

did not participate in the activities alleged in the Verified Complaint and had nothing to do with

the manufacturing, sale, marketing, display, or use of the "Tigertail Catheter" or any of the other

products or things identified in the Verified Complaint.  Id.

     Because the Verified Complaint includes no facts evidencing Crossbow's participation in

any activity or conduct that could even remotely or indirectly be attributed to Crossbow with

regard to the subject of this action, the Verified Complaint should be dismissed against

Crossbow.  Id.  In addition, since Crossbow is an investment advisor to a limited partnership that

invested in Futuremed, no claim can lie against Crossbow, which had no dealings with the

parties in this action.

## <u>ARGUMENT</u>

### Point I

### THE VERIFIED COMPLAINT SHOULD BE DISMISSED<br>BECAUSE THE ALLEGATIONS DO NOT STATE A CLAIM<br><u>AGAINST CROSSBOW AND ARE OTHERWISE TIME-BARRED</u>

     The Verified Complaint does not allege any facts that support a claim against Crossbow,

except that Crossbow is alleged to be Futuremed's parent.  Id. at ¶ 42.  This allegation is wrong.

(See the Stock Certificate, Warner Affdvt. Ex 1; Warner Affdvt. ¶¶ 2-7).  Crossbow is not the

parent of Futuremed, and has had no involvement with Epstein.  Id.  The Verified Complaint,

therefore, should be dismissed against Crossbow.

### A.    <u>The Standard for F.R.C.P. 12(b)(6) Motions</u>

     When considering Crossbow's motion to dismiss the Verified Complaint, the court must

accept as true plaintiff's factual allegations and construe all reasonable inferences in favor of the

plaintiff.  Gorski v. N. H. Dep't of Corrections, 290 F.3d 466, 473 (1st Cir. 2002).  "A dismissal

for failure to state a claim is appropriate if it appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Safe Env't of Am., Inc. v. Employers Ins. of Wausau, 278 F. Supp.2d 121, 124 (D. Mass. 2003) citing Rumford Pharm., Inc. v. City of East Providence, 970 F.2d 996, 998 (1st Cir. 1992).

Even though a defendant's burden is heavy in meeting a Rule 12(b)(6) dismissal, particularly in light of the Supreme Court's recent re-affirmation of the 'notice pleading' standard of Rule 8(a), see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002), in this case, plaintiff has failed not only to properly allege a claim against Crossbow, but failed even to plead facts that would support any such claim. (See Verified Complaint). Thus, in an exercise different than the typical Rule 12(b)(6) analysis, the Court need not even consider whether the factual allegations support the causes of action alleged against Crossbow, because there are no material factual allegations against Crossbow. Id.

### B.    Considering Materials Beyond the Complaint in a Rule 12(b)(6) Motion

A court considering a Rule 12(b)(6) motion will not generally examine materials outside the complaint. McInnis-Misenor v. Maine Med. Ctr., 319 F.3d 63, 67 (1st Cir. 2003); Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002). Under the Federal Rules of Civil Procedure, should "matters outside the pleading" be presented, a Rule 12(b)(6) motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b)(6). But a Rule 12(b)(6) motion is not converted to a Rule 56 motion if the complaint adopts as factual allegations documents appended to the complaint. Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).

The First Circuit, however, has taken a "functional" rather than "mechanical" approach to a Rule 12(b)(6) conversion, holding that a motion to dismiss "is not automatically transformed

into a motion for summary judgment simply because matters outside the pleadings are filed with, and not expressly rejected by, the district court" if the Court ignores the supplementary materials. Garita Hotel Ltd. Pshp. v. Ponce Fed. Bank, 958 F.2d 15, 18 (1st Cir. 1992); see Stein v. Royal Bank of Canada, 239 F.3d 389, 392 (1st Cir. 2001). The Court can consider the Rule 12(b)(6) motion without converting it to a Rule 56(c) motion, taking judicial notice of the supplementary materials submitted with the motion. U.S. v. Melrose-Wakefield Hosp., No. 01-10583, 2003 U.S. Dist. Ct., LEXIS 8846 at *11 (Dist. Mass. May 21, 2003). See Garita Hotel Ltd. Pshp. v. Ponce Fed. Bank, 958 F.2d at 19 (citations omitted).

But, given that the Stock Certificate evidences Crossbow is not the "parent" of Futuremed – in fact, Crossbow does not even hold the Stock Certificate, further removing itself from the complained-of activities in this lawsuit – even if the Court opts to convert this Rule 12(b)(6) motion to a Rule 56(c) motion, there exists no factual question as to Crossbow's role in the events described in the Verified Complaint. Therefore, Crossbow is entitled to summary judgment as a matter of law because no claim could be sustained against it as described in the Verified Complaint.

### C.    The Claims Against Crossbow are Time-Barred

The Verified Complaint alleges that Epstein notified Bard about the claimed misappropriation of Tigertail catheters. This notice was provided on October 10, 1999, and was repeated in January 2000. (See Exs. A-E annexed to Futuremed's Motion to Dismiss Epstein's Complaint). Epstein's admission that he was on notice as early as October 10, 1999 of the claims in this action, which was commenced on October 15, 2003, renders the Counts against Crossbow time-barred under Mass Gen. L. ch. 260 §§ 2A, 5A. See Lareau v. Page, 39 F.3d 384, 388 (1st Cir. 1994) (under Massachusetts law, limitations period begins to run when events place

person on notice of injury) (citations omitted).  Since the tort claims against Crossbow (Counts

III, IV, V, VI, VII, VIII) have a three-year statute of limitations, and the Chapter 93A claim is

four years, see Mass Gen. L. ch. 260 §§ 2A, 5A, all of the claims against Crossbow are time-

barred, and should be dismissed.

### D.    Plaintiffs Have Not Pleaded or Stated a Claim Against Crossbow

The only allegation against Crossbow is that Crossbow is the "parent" of Futuremed.

(See Verified Complaint ¶ 42).  Futuremed is alleged to have manufactured products for Bard

and to have possessed plaintiff's proprietary information.  Id. at ¶¶ 4, 5, 38, 41, 42, 50.

Crossbow is not the "parent" of Futuremed.  (See the Stock Certificate, Warner Affdvt.

Ex. 1; Warner Affdvt ¶¶ 2-7).  In fact, Crossbow does not even hold the Stock Certificate, which

is instead held by Crossbow Venture Partners LP, a different entity, which also is not the

"parent" of Futuremed.  Id.  Crossbow therefore is not even the right party for Epstein to allege a

'parent – subsidiary' relationship.  Id.

Plaintiff presumably is asserting that Crossbow is liable for the claimed torts due to a

'parent-subsidiary' or alter-ego relationship.  There could be no other basis to assert a claim

against Crossbow, who is not alleged to have done anything other than own Futuremed, which as

noted above is in any event an incorrect allegation.

The leading Massachusetts case on piercing the corporate veil is My Bread Baking Co. v.

Cumberland Farms, Inc., 353 Mass. 614 (1968).  In My Bread, the Massachusetts Supreme

Judicial Court noted, albeit in dicta, but which dicta is oft-cited in veil piercing actions, in an

action in which the defendant did not return baking racks to a distributor and was sued for

conversion, that "a corporation or a person controlling a corporation and directing, or

participating actively in its operations may become subject to civil or criminal liability on principles of agency or of causation." Id. at 618 (citations omitted).

Such control has to be evidenced more than by a parent-subsidiary relationship. Instead, "confused intermingling" with "substantial disregard of the separate nature of the corporate entities" or "serious ambiguity about the manner and capacity in which the [two] corporations and their respective representatives [were] acting" must be proven. Id. at 619.

Plaintiffs must generally show more than a parent-subsidiary or other familial relationship between the two entities. Id. "Mere overlapping of boards does not meet the test of 'active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control.'" Birbara v. Locke, 99 F.3d 1233, 1240 (1st Cir. 1996) citing My Bread, 353 Mass. at 619.

In this case, there is no allegation that plaintiff ever believed it was dealing with Crossbow, or that Crossbow directed, controlled, or persuaded the activities of Futuremed. (See Verified Complaint). Leatherbee Mort. Co. v. Cohen, 37 Mass. App. Ct. 913 (1994) (evidence of control or participation required).

There also is no allegation (i) that Futuremed was undercapitalized; (ii) that defendants failed to observe corporate formalities; (iii) of an absence of functioning officers besides the dominant shareholders; (iv) of an absence of corporate records, and the like – all factors generally considered by First Circuit when examining a veil piercing action. See e.g., Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 15-16 (1st Cir. 1985) (citations omitted).

"Massachusetts has been somewhat more 'strict' than other jurisdictions in respecting the separate entities of different corporations." My Bread, 353 Mass at 620-621. The Supreme Judicial Court has repeated that proposition more recently. See e.g., Spaneas v. Travelers Indem.

Co., 423 Mass. 352 (1996) (veil pierce only to prevent gross inequity); Berger v. H.P. Hood, Inc., 416 Mass. 652 (1993) (corporate form respected absent compelling equity reason); Worcester Ins. Co. v. Fells Acres Day Sch., 408 Mass. 393 (1990).  See Dale v. H.B. Smith Co., Inc., 910 F. Supp. 14, 18 (D. Mass 1995) (under Massachusetts law, disregarding separate corporate entities is the exception, not the rule).

There can be no dispute that Crossbow is an unrelated investment advisor and has no relationship with Epstein or Futuremed.  (See the Stock Certificate, Warner Affdvt Ex. 1; Warner Affdvt. ¶¶ 2-7).  Crossbow therefore cannot be responsible for the torts that may have been committed by Futuremed.  Id.; see Pepsi-Cola Bottling Metro. Co. v. Checkers, Inc., 754 F.2d at 15-17; My Bread, 353 Mass. at 618-620.  Even if Crossbow was the "parent" of Futuremed, plaintiff has not alleged the required My Bread factors:  (i) pervasive control over the activities of Futuremed leading to "confused intermingling of activity" of the two corporations; and (ii) corporate formalities should be disregarded to defeat fraud or to prevent a gross inequity.  My Bread, 353 Mass. at 618-619.  (See Verified Complaint).

Thus, even if Epstein alleged an alter-ego relationship, there is such strong authority to uphold the corporate form between the two parties that Epstein would have to demonstrate considerable facts before the alleged relationship is pierced in order to hold Crossbow responsible for the alleged wrongs of Futuremed.  Id.  See United States v. Bestfoods, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law [ ] that a parent corporation [ ] is not liable for the acts of its subsidiaries.") (citations omitted); My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. at 619 (parent not liable for acts of subsidiary unless parent exercises dominion and control over subsidiary such that subsidiary is mere instrumentality).

But since no such allegations even are made in the Verified Complaint, there can be no claims sustained against Crossbow, which is not alleged to have participated in Futuremed's business or had any interaction with Epstein or the activities complained of in the Verified Complaint.

## Point II

### CROSSBOW IS NOT VICARIOUSLY LIABLE<br>FOR THE TORT CLAIMS OF PLAINTIFF

In support of its tort claims, Epstein generally lumps Crossbow together with the other defendants in alleging *"Defendants . . . "* rather than specifically alleging any actual conduct of Crossbow.  In fact, Crossbow cannot even respond to the claims because, as an alleged "parent," it could not have done, except vicariously, any of the activities that allegedly give rise to the tort claims against it.  (See Verified Complaint).  But Epstein does not allege Crossbow is vicariously liable for the activities attributed to Futuremed, and therefore, even assuming the broadest and most liberal construction of the pleadings in the widest deference to Epstein, Crossbow cannot be held responsible for the tort claims asserted against Futuremed.

### A.    Epstein Cannot Maintain his Misappropriation Claim Against Crossbow

The initial claim against Crossbow, misappropriation of trade secrets (Count III), requires proof that Crossbow came into possession of a trade secret of Epstein and disclosed the trade secret without Epstein's permission.  Atlantic Wool Combing Co. v. Norfolk Mills, Inc., 357 F.2d 866, 869 (1st Cir. 1966). "[T]he breach of the duty not to disclose or to use without permission confidential information acquired from another" is the essence of a misappropriation claim.  Jet Spray Cooler, Inc. v. Crampton, 377 Mass. 159, 165 (1979); see Junker v. Plummer, 320 Mass. 76, 80 (1946).

To maintain a claim for misappropriation, a plaintiff must show that she shared a confidential relationship with the defendant, possessed a trade secret that was disclosed to the defendant, and that the defendant made use of the disclosure in breach of the confidence reposed in her.  Burten v. Milton Bradley Co., 763 F.2d 461, 463 (1st Cir. 1985) citing Restatement of Torts § 757 (1939); R. Milgrim, Trade Secrets § 7.07[1] (1984).  See Mass. Gen. L. ch. 93 § 42 (claim requires intent to convert improperly obtained trade secret).

In this case, there is no allegation that Epstein shared with Crossbow any trade secret or even that the parties had a confidential relationship.  (See Verified Complaint).  See Data Gen. Corp v. Grumman Sys. Support Corp., 36 F.3d 1147, 1165 (1st Cir. 1994) (misappropriation requires that the information in question be a trade secret, reasonable means were used to protect the trade secret, and improper means were used and the trade secret disclosed); J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 357 Mass. 728, 737-739 (1970).

Here, Epstein has not even alleged that Crossbow possessed a trade secret based upon a confidential relationship with Epstein that Crossbow ultimately breached.  Epstein has not alleged any, let alone a special or fiduciary relationship with Crossbow, or even that the parties ever met or conversed.  (See Verified Complaint).  Thus, the trade secret violation claim against Crossbow should be dismissed.

### B.    Epstein Cannot Maintain his Conversion Claim Against Crossbow

The tort of conversion (Count IV) requires a plaintiff to prove that a person intentionally or wrongfully exercised control, ownership, or dominion over personal property to which he had no right of possession.  Cadle Co. v. Schlichtmann, 267 F.3d 14, 17 (1st Cir. 2001), cert. denied, 535 U.S. 1018 (2002), citing Abington Nat'l Bank v. Ashwood Homes, Inc., 19 Mass. App. Ct. 503, 507 (1985).

A plaintiff must show that: "(i) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused." Evergreen Marine Corp. v. Six Consignments of Frozen Scallops, 4 F.3d 90, 94 (1st Cir. 1993) (citations omitted).

In this case, there is no claim against Crossbow that it possesses or possessed the subject technology or trade secrets pertaining to the Tigertail Catheter, except the conclusionary allegation that *"Defendants have . . . converted . . ."* (See Verified Complaint ¶ 84). There is no allegation that Crossbow took possession or control over the Tigertail Catheter, or that Crossbow, as an investment advisor to a third-party, even had knowledge of these alleged activities. Id.

Epstein must do more than simply lump Crossbow together with the other defendants in alleging that a trade secret was converted. Id. Crossbow could only be liable for the tort of conversion if it intentionally and wrongfully exercised control over Epstein's personal property to which it had no previous right. See Evergreen Marine Corp., 4 F.3d at 95; In re Halmar Distrib., Inc., 968 F.2d 121, 129 (1st Cir. 1992). The Verified Complaint contains no such allegation against Crossbow. (See Verified Complaint).

Because there are no allegations against Crossbow, as there are against the other defendants, that Crossbow wrongfully converted a trade secret or technology owned by Epstein, no claim for conversion can lie against Crossbow. Id.

**C.**    **Epstein Cannot Maintain his Unjust Enrichment Claim Against Crossbow**

Epstein alleges in conclusory form that the *"[d]efendants have been unjustly enriched by inter alia using Plaintiff's technology, trade secrets and intellectual property."*  (See Verified Complaint ¶ 87).  But there is no allegation that Crossbow used or even knew of Epstein's "technology," "trade secrets," or "intellectual property."  Id.  Epstein does not state how Crossbow was allegedly unjustly enriched, what benefit it allegedly derived, or even how Crossbow profited from such enrichment, if at all.  Id.

As Epstein did not assert even one allegation suggesting that Crossbow, an investment advisor to none of the parties, somehow benefited from any of the activities described in the Verified Complaint, the bulk of which allegations are attributed to Bard, then this claim against Crossbow should be dismissed.  See Brandt v. Wand Partners, 242 F.3d 6, 16 (1st Cir. 2001). Epstein must do more than allege Crossbow was unjustly enriched without disclosing how Crossbow was enriched at the expense of Epstein.

Even if the Court imputes to the Verified Complaint an allegation that Crossbow benefited from the alleged conversion of the Tigertail Catheter or any other Epstein technology or design (an imputation that would be legal error if based on the incorrect allegation that Crossbow is Futuremed's "parent"), no claim can rest against Crossbow because there is no allegation that Crossbow did anything to become "unjustly enriched."  There is not one allegation against Crossbow that even suggests Crossbow did anything to obtain control or derive a benefit from any property claimed to be owned by Epstein.  (See Verified Complaint).

**D.**    **Epstein Cannot Maintain his Misrepresentation Claims Against Crossbow**

Epstein's claims for misrepresentation (Count VI) and negligent misrepresentation (Count VII) also fail to properly allege a cause of action against Crossbow.  Id. at ¶¶ 89-109.  For

both claims, Epstein again lumps Crossbow with the other defendants in broadly asserting they made *"representations as to proper notification to the Food and Drug Administration pertaining to BUD Soft Tip Catheter."* Id. at ¶¶ 90, 101.  But nowhere in the Verified Complaint does it allege that Crossbow communicated with the FDA, or, in fact, communicated with anybody regarding this matter.  See id. generally.

Epstein also alleges that *"Defendants made representations as to filing a Master Design History . . . 510k application to the FDA to substantiate additional claims like radiopacity and tip strength."* Id. at ¶¶ 91-92, 102-103.  These allegations are not made, however, against Crossbow, which is not alleged to have ever had any contact with the FDA or that Crossbow even has a "Master Design History."  Id.  Instead, Epstein lumps Crossbow together with Bard and Futuremed in making these allegations, even though the Verified Complaint does not even mention Crossbow, except to (wrongly) allege the "parent" relationship.  Id. at ¶ 42.

Epstein's intentional and negligent misrepresentation claims (Counts VI, VII) can be handled together because the degree of culpability a plaintiff must show to establish liability for negligent misrepresentation is less than for intentional misrepresentation, and Epstein has not met either burden.  See Cummings v. HPG Int'l Inc., 244 F.3d 16, 24-25 (1st Cir. 2001).

Under Massachusetts law, Epstein must show that Crossbow made a false statement of a material fact that was intended to induce Epstein to act, and then rely on the false statement. Zimmerman v. Kent, 31 Mass. App. Ct. 72 (1991) quoting Acushnet Fed. Credit Union v. Roderick, 26 Mass. App. Ct. 604 (1988); Danca v. Taunton Savings Bank, 385 Mass. 1, 8, (1982).  "Massachusetts courts treat negligent misrepresentation claims more as negligence actions than deceit actions, focusing on the degree of care exercised by the speaker in making the statement."  Cummings v. HPG Int'l Inc., 244 F.3d at 25.

In this case, for purposes of its Rule 12(b)(6), or, in the alternative, Rule 56(c) motion, whether Crossbow made an intentional or negligent misrepresentation is of no moment because Crossbow is not alleged to have made any statement or representation to the FDA or to Epstein, upon which Epstein relied. (<u>See</u> Verified Complaint). There is no allegation that Crossbow made a representation to any person that was intended, or resulted in inducing Epstein or a third-party to take some action to Epstein's detriment. <u>See</u> <u>Zimmerman v. Kent</u>, 31 Mass. App. Ct. at 77. In fact, there is no allegation Crossbow made a representation to anybody. (<u>See</u> Verified Complaint).

Since Epstein failed to allege Crossbow made a false statement of material fact that he relied upon to his detriment, then no claim for misrepresentation can lie against Crossbow. <u>Id.</u> <u>See</u> <u>Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.</u>, 72 F.3d 190, 199-200 (1st Cir. 1995) (fraudulent and negligent misrepresentation claims each require false representation of material fact, knowledge of falsity or carelessness on the part of the defendant, and a reasonable reliance by the plaintiff), <u>cert.</u> <u>denied</u>, 517 U.S. 1245 (1996); <u>Fox v. F & J Gattozzi Corp.</u>, 41 Mass. App. Ct. 581, 587 (1996) (requiring "justifiable" reliance by the plaintiff).

Epstein must do more than lump Crossbow together with the misrepresentation claims against Bard; Epstein must evidence the <u>Zimmerman v. Kent</u> factors and demonstrate that Crossbow made false statements to induce Epstein to act adverse to his interests. Epstein cannot maintain such a claim because he did not even allege that Crossbow made such statements.

Since Fed. R. Civ. P. 9(b) requires claims of misrepresentation to be pleaded with particularity, and Epstein has failed not only to particularly plead the tort of misrepresentation but failed to plead any allegations at all against Crossbow, Counts VI and VII should be dismissed. In addition, Count VII (negligent misrepresentation) should be dismissed for the

further reason that Epstein has not alleged that he – or others – relied on any statements by Crossbow, and that any such statements induced Epstein to take any type of detrimental action. Epstein has failed to meet the requirements of Fed. R. Civ. P. 9(b) by not specifying the statements that are alleged to have been fraudulent, who made them, and when they were made. Suna v. Bailey Corp., 107 F.3d 64, 68 (1st Cir. 1997).

**E. Epstein Cannot Maintain his Fraudulent Concealment Claim Against Crossbow**

In Count VIII, Epstein alleges that the *"Defendants concealed and suppressed material facts as to notification to the Food and Drug Administration pertaining to the BUD and Soft Tip Catheter [and] to filing a Master Design History [and] to their resubmitting the 510k to the FDA [and] to the dissemination to third parties of Plaintiff's technology . . . "* (See Verified Complaint ¶¶ 111-116). The common element of each of these allegations is that *"Defendants"* are alleged to have done these things, but Crossbow is not specifically alleged to have done any of these things. Id.

The Verified Complaint omits any allegation that Crossbow was involved in making statements to the FDA or a 510k application to the FDA. Id. There is no allegation that Crossbow and Epstein had a relationship such that Crossbow had a duty to disclose the alleged 'material facts' to Epstein. Id. See Roadmaster Indus., Inc. v. Columbia Mfg Co., Inc., 893 F. Supp. 1162, 1179 (D. Mass. 1995) citing HenWarner v. Cabeceiras, 14 Mass. App. 225, 227, appeal denied, 387 Mass. 1103 (1982). There also is no allegation that Crossbow ever was in possession of the alleged 'material facts' that Epstein claims should have been disclosed to him. Id.

A claim for fraudulent concealment requires even more than a claim for fraudulent misrepresentation: a plaintiff must prove that the defendant took affirmative steps to conceal

material facts.  <u>Roadmaster Indus., Inc. v. Columbia Mfg Co., Inc.</u>, 893 F. Supp. at 1179.  This requires Epstein to do more than allege Crossbow simply failed to disclose material facts; it requires Epstein to allege that such facts were known to Crossbow and that Crossbow did something to conceal the facts from Epstein.  <u>Id.</u>  Epstein has failed to allege such conduct by Crossbow, rendering his claim defective.  <u>Id.</u>

Nor has Epstein alleged the required fiduciary duty between Crossbow and Epstein.  <u>Id.</u> <u>See</u> <u>Walsh v. Chestnut Hill Bank & Trust Co.</u>, 414 Mass. 283, 288 (1993), n.6 <u>citing</u> subsection 2, Restatement (Second) of Torts § 551.  While Epstein alleges (incorrectly) that Crossbow is Futuremed's parent, there is no allegation that this created any fiduciary relationship between Crossbow and Epstein.  (<u>See</u> Verified Complaint).

Since Epstein has not alleged with particularity (in compliance with Rule 9(b)) or even generally that there is a fiduciary relationship between Crossbow and Epstein, nor is Crossbow alleged to have hidden from Epstein material facts or information, requisite allegations that at a minimum are required to support a fraudulent concealment claim, Count VIII should be dismissed.

### F.  <u>Epstein Cannot Maintain his Claim for Violation of M.G.L. 93A §§ 2, 11</u>

Epstein's claim (Count X) against Crossbow under the Massachusetts Unfair Trade Practices Act should be dismissed because there is no allegation that Crossbow engaged in any unfair or deceptive act or practice at all, let alone one that occurred primarily and substantially within Massachusetts.  <u>Id.</u>  Because the Verified Complaint does not specifically allege that Crossbow committed an act which "occurred primarily and substantially within the commonwealth," no claim for violation of the Act can be sustained.  Mass. Gen. Laws ch. 93A

§ 11 (2002).  Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 473-474

(2003) (inquiry concerns center of gravity of the factual circumstances).

Massachusetts courts applying the "unfair" test under Chapter 93A, § 11, require

evidence of "objectionable conduct [that] must attain a level of rascality that would raise an

eyebrow of someone inured to the rough and tumble of the world of commerce."  Saint Gobain

Indus. Ceramics v. Wellons, Inc., 246 F.3d 64, 73 (1st Cir. 2001) (quotation omitted).  See

Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498 (1979).  To prevail under Chapter 93A,

the defendant's conduct must generally be immoral, oppressive, or unscrupulous.  Kenda Corp.,

Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 234 (1st Cir. 2003).  There is no

allegation against Crossbow that any of its conduct was immoral, oppressive, or unscrupulous.

Moreover, even if the Court accepts as true the "parent" allegation against Crossbow,

claims under Chapter 93A are not generally available to parties in a strictly private transaction

not ordinarily conducted in the course of their business, such as is alleged in the Verified

Complaint.  KPS & Assoc., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 23-25 (1st Cir. 2003).  If

the "undertaking is not 'in the ordinary course of a trade or business,'" no Chapter 93A claim

will lie.  Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, n.33, cert. denied, 522 U.S.

1015 (1997) quoting Lantner v. Carson, 374 Mass. 606, 608 (1978).

Since the Verified Complaint does not allege transactions that occurred in trade or

commerce as contemplated by the Act, but instead describes isolated private commercial

dealings between private parties, no claim under Chapter 93A can be asserted against Crossbow.

St. Paul Fire & Marine Ins. Co. v. Ellis & Ellis, 262 F.3d 53, 67 (1st Cir. 2001) (isolated, private

commercial disputes not actionable under Chapter 93A); First Enter., Ltd v. Cooper, 425 Mass.

344, 347-348 (1997) (same).  See Szalla v. Locke, 421 Mass. 448, 451 (1995) (disputes between

parties in same venture do not give rise to Chapter 93A claim); <u>Lantner v. Carson</u>, 374 Mass. at

608; <u>Arthur D. Little, Inc. v. East Cambridge Sav. Bank</u>, 35 Mass. App. Ct. 734, 743 (1994) (if

parties' only contact occurred in context of litigation, no Chapter 93A claim lies).

     Moreover, since there is no allegation that Crossbow, a Florida investment advisor to

none of the parties, ever engaged in any acts in Massachusetts in connection with the activities

complained of in the Verified Complaint, the unfair trade practices claims against Crossbow

should be dismissed.

### <u>CONCLUSION</u>

     For the reasons set forth above, the following claims in the Verified Complaint should be

dismissed against Crossbow: misappropriation of trade secrets (Count III); conversion (Count

IV); unjust enrichment (Count V); misrepresentation (Count VI); negligent misrepresentation

(Count VII); fraudulent concealment (Count VIII); and violation of M.G.L. Ch. 93A §§ 2, 11

(Count X).

     Given the lack of any material allegations against Crossbow, coupled with the fact that

Crossbow actually has nothing to do with the complained-of activities in this action, Crossbow

should be awarded its attorneys' fees and costs in having to defend this meritless action, which

includes no evidence that any examination was undertaken to ascertain whether Crossbow

actually had any connection to the factual allegations.

Dated: December 29, 2003

                    WOLF, GREENFIELD & SACKS, P.C.

                    /s/ Michael A. Albert
                    Michael A. Albert, BBO # 558566
                    Michael N. Rader, BBO # 646990
                    600 Atlantic Avenue
                    Boston, Massachusetts 02210-2206
                    617-720-3500

Of Counsel:

Samuel D. Levy (SDL 9271)
 Admission *pro hac vice* pending
Wuersch & Gering LLP
11 Hanover Square, 19th Floor
New York, New York 10005
212-509-5050

### **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true copy of Crossbow Ventures Inc.'s Memorandum of Law in Support of the Motion to Dismiss the Verified Complaint was served upon the following attorney of record on December 29, 2003 by first-class, regular mail:

Andrew Good, Esq.
Good & Cormier
83 Atlantic Avenue
Boston, MA  02110

<u>/s/ Michael A. Albert</u>
Michael A. Albert
