UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT M. EPSTEIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No.: 03 CV 12297 (RWZ) |
| ) | |
| C.R. BARD, INC., ) | |
| FUTUREMED INTERVENTIONAL, INC., ) | |
| and CROSSBOW VENTURES, INC. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT CROSSBOW'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND
REQUEST FOR ORAL ARGUMENT PURSUANT TO LOCAL RULE 7.1(d)**

## I.    INTRODUCTION

Defendant Crossbow Ventures, Inc. (referred to hereafter as "Crossbow") has moved to dismiss Plaintiff's (referred to hereafter as "Mr. Epstein") Complaint arguing that (1) the allegations do not state a claim against Crossbow and are otherwise time-barred and (2) Crossbow is not vicariously liable for the tort claims of Mr. Epstein.

For the reasons set forth herein, Mr. Epstein opposes Crossbow's motion on all bases. First, based upon the documents referenced in Mr. Epstein's Complaint, Mr. Epstein's claims are timely. Second, the allegations set forth in Mr. Epstein's Complaint do state a claim against Crossbow. Third and finally, Crossbow is liable for the tort claims. Crossbow is an integral part of the entire transaction involving Mr. Epstein, Defendant C.R. Bard, Inc. (referred to hereafter as "Bard"), and Defendant Futuremed Interventional, Inc. (referred to hereafter as "Futuremed"). Therefore, Crossbow is not the actionless entity it purports to be.

1

SCANNED
DATE: 2-19-04
BY: ___

As shown below, Mr. Epstein's claims as pled more than meet the level of scrutiny for dismissal purposes and as a result, Crossbow's Motion to Dismiss should be denied and Mr. Epstein's claims should stand as pled. As an alternative, if needed, Mr. Epstein should be allowed to amend his Complaint.

## II.    ARGUMENT

### A.    The Relationship of Crossbow, Futuremed, and Bard.

As a preliminary matter the relationship of Crossbow, Futuremed, and Bard must be addressed. Crossbow protests that it should not be a party to this action due to the fact that "the factual allegations against Crossbow are limited to one isolated statement." (Crossbow Venture Inc.'s Memorandum of Law in support of Motion to Dismiss the Verified Complaint, referred to hereafter at Crossbow's Memorandum, pp. 1-2.) Crossbow goes on to explain its allegedly distant relationship with Futuremed. (Crossbow's Memorandum, p. 2.) Crossbow however fails to set forth numerous interesting facts that support its inclusion in this action.

As an initial matter, for clarification purposes, Mr. Epstein has never alleged the existence of a business or other relationship between Mr. Epstein and Crossbow. However, Mr. Epstein does dispute the statement by Crossbow that there are "no relationships between Crossbow and Bard or Futuremed." (Crossbow's Memorandum, p. 2.) Crossbow expressly admits on its company website that Futuremed is one of its so-called "portfolio companies." (Crossbow's Website, visited on February 10, 2004; http://www.crossbowventures.com/newsite/portfolio.shtml; and Exhibit A.)

Crossbow specifically admits on its company website that Futuremed manufactures devices which are sold through Bard:

> **Futuremed Interventional, Inc.** - Athens, TX. Futuremed is a vertically integrated manufacturing and development company. Its principle products are for

2

use in urology and interventional radiology. The Company's expertise is in plastics technology, extrusion, balloon molding, welding, coating and counter rotational dying technology. This expertise is used to produce angioplasty catheters, angiography catheters, vascular stent delivery systems, hydrophilic urethral stents and biopsy guns. **The Company currently sells products internationally through C.R. Bard, Inc.** and Angiomed GmbH & Co. Medizintechnik KG, the preponderance of whose sales are angioplasty and angiography catheters and biopsy guns.

(Crossbow's Website, visited on February 10, 2004; http://www.crossbowventures.com/newsite/life_science_healthcare_2.shtml; and Exhibit B.) (emphasis added). In addition, Crossbow lists Futuremed as a portfolio company on its website. (Crossbow's Website, visited on February 10, 2004; http://www.crossbowventures.com/newsite/life_science_healthcare_2.shtml; and Exhibit A.)

Curiously, in its Memorandum Crossbow asserts that "since Crossbow is an investment advisor to a limited partnership that invested in Futuremed, no claim can lie against Crossbow, which had no dealings with the parties in this action." (Crossbow's Memorandum, p. 3.) Therefore, Crossbow has admitted to the existence of a business relationship with Futuremed both on its website and in its Memorandum, thus Crossbow obviously has had dealings with Futuremed making Crossbow subject to claims against it by Mr. Epstein.   (Crossbow's Memorandum, p. 3.)  As a result, the Complaint against Crossbow should not be dismissed.  In the alternative, if needed, Mr. Epstein should be granted leave to amend his complaint to properly plead facts sufficient to include Crossbow in this action.

**B.     The Standard for F.R.C.P. 12(b)(6) Motions and Considering Materials Beyond the Complaint in a Rule 12(b)(6) Motion.**

As the Federal Rules and the 1st Circuit vehemently mandate, the moving party in a motion to dismiss faces an extremely heavy burden and a high threshold of scrutiny.  In deciding a 12(b)(6) motion, the court will "treat all allegations in the complaint as true and draw all

3

reasonable inferences therefrom in favor of the plaintiff." *Rumford Pharmacy, Inc. v. East Providence*, 970 F.2d996, 997 (1st cir. 1992).   A court should not dismiss a suit on the pleadings alone "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).   A complaint should not be dismissed for failure to state a claim unless it appears **beyond doubt** that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Fed. R. Civ. P. 12(b)(6), 28 U.S.C.A, note 561 (emphasis added).

In this case, Crossbow asserts that the determination is a simple one due to the fact that "there are no material factual allegations against Crossbow." (Crossbow's Memorandum, p. 4.) In further support of its position, Crossbow has submitted a Stock Certificate which purportedly "evidences Crossbow is not the 'parent' of Futuremed." (Crossbow's Memorandum, p. 5.)

Whether the Court treats Crossbow's motion as a 12(b)(6) motion or a Rule 56 motion for summary judgment, the facts are clear. As demonstrated by the evidence from Crossbow's website, a relationship between Crossbow and Futuremed, and even Bard, does exist which makes Mr. Epstein's action against Crossbow proper. (Exhibits A-B.) Crossbow is an integral part of the entire transaction involving Mr. Epstein, Bard, and Futuremed. Consequently, Mr. Epstein's cause of action against Crossbow should neither be dismissed nor is Crossbow entitled to summary judgment that it is not a party to this action. In the alternative, if needed, Mr. Epstein should be granted leave to amend his complaint to properly plead facts sufficient to include Crossbow in this action.

## C.     The Claims Against Crossbow are not Time Barred.

Crossbow claims that based on Mr. Epstein's October 10, 1999 letters addressed only to Bard (Epstein's Supplemental Affidavit Exhibits A and B), his claims are time barred due to the

Massachusetts Statute of Limitations. (Crossbow's Memorandum, p. 5). However, a review of the letter clearly reveals that Mr. Epstein's letter was addressed only to Bard and the letter only discusses Bard. Crossbow and Futuremed are not discussed or referenced in the October 10, 1999 letters to Bard. (Epstein's Supplemental Affidavit Exhibits A, B, D, F and I.) Thus, Crossbow's assertions, as well as the assertions of Bard and Futuremed, that Mr. Epstein was on notice on October 10, 1999 of his causes of action against Bard, Futuremed and Crossbow are false and in error. (Epstein's Supplemental Affidavit ¶ 20.)

Rather, on or about November 11, 2000, Mr. Epstein wrote a letter and e-mails to both the Directors of Crossbow and a letter and e-mails to the executives at Crossbow to inform them that he was suspicious of Futuremed and its relationship with Bard. (Epstein's Supplemental Affidavit Exhibit J.) Mr. Epstein explained to Crossbow that he suspected that Bard had transferred his technology to Futuremed. (Epstein's Supplemental Affidavit ¶ 17 and Supplemental Affidavit Exhibit J.) Therefore, Crossbow was on notice on or about November 11, 2000 that Mr. Epstein suspected wrong doing by Futuremed, however Crossbow chose to ignore Mr. Epstein's request for information and avoided him altogether. Thus, because Crossbow never cooperated with Mr. Epstein, Mr. Epstein had no knowledge of how they were damaging him.

Thus, Crossbow was put on notice by Mr. Epstein. However, Crossbow never replied to Mr. Epstein's letters. (Complaint ¶ 42 and Epstein's Supplemental Affidavit ¶ 18.) "The mere failure to respond to a letter does not indicate an adoption unless it was reasonable under the circumstances for the sender to expect the recipient to respond and to correct erroneous assertions." See *United States v. Hale*, 422 U.S. 171, 176 (1975) (failure to contest assertion evidence of acquiescence only if natural under circumstances to object); *Hellenic Lines Ltd v.*

*Gulf Oil Corp.*, 340 F.2d 398, 401 (2d Cir. 1965) (failure to respond to letter, under circumstances reasonably calling for reply, constitutes admission by silence); 4 *Weinstein's Evidence*, P 801(d)(2) (B)(01) at 801-146 (1979) (whether silence constitutes admission depends upon whether denial normal under circumstances). *Southern Stone Co., Inc. v. Singer*, 665 F.2d 698, 702, 703 (11th Cir. 1982).

Because neither Crossbow nor Futuremed ever responded to Mr. Epstein's written inquiry and allegations, Mr. Epstein was without the requisite knowledge as to Crossbow's and Futuremed's opinions on the matter or what there intentions were. (Epstein's Supplemental Affidavit ¶ 19.)

Further, claims against Futuremed and Crossbow are not time barred because Mr. Epstein had no evidence of Futuremed's and Crossbow's conduct until at least April of 2002, when it was reported to him by Mr. Bill Appling that Futuremed was copying his catheters and selling them in 2001. (Epstein's Supplemental Affidavit ¶ 27-28, ¶ 54-55 and ¶ 69.) Up until April 2002, Mr. Epstein had no knowledge of Futuremed's offering for sale and holding out as its own a product based upon the misappropriation of Mr. Epstein's trade secrets and technology (Id.), thus making Mr. Epstein's claims within the period prescribed by applicable statute of limitations. It was the conduct of Crossbow and Futuremed which has tolled the statute of limitations and made Mr. Epstein's claims timely.

Since Mr. Epstein filed his Complaint on October 15, 2003 against Bard, Crossbow and Futuremed, said complaint is timely and properly within the statute of limitations in Massachusetts. (Id. at ¶ 21). Thus the claims of Mr. Epstein should be upheld by the Court and Crossbow's Motion to Dismiss should be denied.

### D.    Mr. Epstein has Pleaded and Stated Multiple Claims Against Crossbow.

Mr. Epstein has pleaded in the Complaint multiple claims against Bard, Futuremed and Crossbow. As support for its assertion that Mr. Epstein has not pleaded or stated a claim against Crossbow, Crossbow claims that it is not the "parent" of Futuremed or the proper party being sued. (Crossbow Memorandum, p.6.) Even if Crossbow is not the parent company of Futuremed, Crossbow is unable to prove that it is separate from Futuremed or that it did not direct Futuremed's actions.

Both Crossbow's and Futuremed's non-communication with Mr. Epstein created serious ambiguity about the manner and capacity in which the two corporations and their respective representatives were acting. Also, as discussed above, Crossbow's admissions on it's website creates a further ambiguity as to the relationship between the two entities. (Exhibits A-B.)

Mr. Epstein wrote to Crossbow because he could find no other mention of their existence. At the time of Mr. Epstein's November 11,2000 communication to Crossbow, Futuremed did not have a website on the Internet where one could locate the company or find any information about the company. The only way Futuremed could be found is on Crossbow's website. (Epstein's Supplemental Affidavit Exhibit J.)

Mr. Epstein has always believed that he was dealing with Crossbow because Crossbow never wrote to or contacted Mr. Epstein in any way to deny his allegations or to inform him that Crossbow believed that he was in error. Mr. Epstein wrote to Crossbow and Futuremed because Mr. Epstein was of the belief that Crossbow directed, controlled, or persuaded the activities of Futuremed. (Epstein's Supplemental Affidavit ¶ 17-19.)

Thus, Crossbow has admitted to the existence of business relationships with Futuremed; admitted that it has dealings with Futuremed and Bard; and admitted that Futuremed sells its products through Bard. (Exhibits A-B.) As to whether Crossbow's statements in Crossbow's

7

website constitute inadmissible hearsay, "representations made by [a] defendant[] on [a] website are admissible as admissions of the party-opponent under FRE 801(d)(2)(A)." *Van Westrienen v. Americontinental Collection Corp.*, 94 F.Supp.2d 1087, 1109 (D. Or. 2000). Therefore, the allegations made by Mr. Epstein in his Complaint against Crossbow are timely and Crossbow's Motion to Dismiss should be denied by the Court.

In the alternative, the Court should allow Mr. Epstein to amend his Complaint so that he may include allegations (i) that Futuremed was undercapitalized; (ii) that defendants failed to observe corporate formalities; (iii) of an absence of functioning officers besides the dominant shareholders; (iv) of an absence of corporate records, and the like – all factors generally considered by First Circuit when examining a veil piercing action. See e.g., *Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 15-16 (1st Cir. 1985) (citations omitted).

Further, as an alternative, in response to Crossbow's assertions that it is not a proper party to this lawsuit. (Crossbow's Memorandum p. 6.) Mr. Epstein should be allowed amend his Complaint to include Crossbow Venture Partners LP, who according to Crossbow, holds the Stock Certificate of Futuremed. (Crossbow's Memorandum, p. 6.) In the interests of justice, if needed, the Court should permit leave of Court for Mr. Epstein to amend his Complaint to include Crossbow Venture Partners LP as a party to this action. Crossbow specifically admits that Crossbow Venture Partners LP is a different entity. (Crossbow Memorandum, p.6.)

**E.      Crossbow's Argument That "Crossbow Is Not Vicariously Liable For The Tort Claims Of Plaintiff" Is In Error In Law And Fact.**

Crossbow's argument that it is not vicariously for the tort claims of Mr. Epstein is in error in law and fact. Crossbow has maintained that it is not vicariously liable for the tort claims complained of by Mr. Epstein. Curiously, as discussed above, a review of the website of

Crossbow lists Futuremed as one of its "Portfolio Companies." Crossbow goes on to state on its website, that "Futuremed sells is products through C.R. Bard." (Exhibits A-B.)

"The word 'control' does not mean day-to-day management of the portfolio company, but means rather that major decisions are probably seldom taken without consulting the investment company or its sponsors, or that the control is at least potential and equivalent at all times to unusual influence." *IBS Financial Corp. v. Seidman & Associates, L.L.C.*, 954 F.Supp. 980, 987 (D.N.J. 1997). Interestingly, Defendants Crossbow and Futuremed are being represented by the same attorneys in this action. (Crossbow's Memorandum, p. 18.)

**1.    The Court Should Allow Mr. Epstein to Maintain his Misappropriation Claim Against Crossbow (Count III).**

Crossbow was on notice from Mr. Epstein of the fact that he claimed his information to be a trade secret based upon Mr. Epstein's letter of November 11, 2000. (Epstein Supplemental Affidavit ¶ 17-19 and Supplemental Affidavit Exhibit J.) Mr. Epstein's proprietary information was in fact a protected trade secret and the disclosure by third persons at Bard to Futuremed and Crossbow was a breach of the duty to keep secret.  Crossbow has failed to dispute these facts in their Memorandum.

Therefore, this Court should deny Crossbow's Motion to Dismiss Mr. Epstein's Misappropriation Count.  In the alternative, Mr. Epstein moves for leave of court to amend his complaint to plead his misappropriation complaint against Crossbow.  If the Court finds that Mr. Epstein has not plead this count properly, then, in the interests of justice, the Court should allow Mr. Epstein to amend his complaint.

**2.    The Court Should Allow Mr. Epstein to Maintain his Conversion Claim Against Crossbow (Count IV).**

In order to establish a case for conversion, a plaintiff must show the following:

9

(1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused.

*Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 94 (1st Cir. 1993) (citations omitted).

In the Complaint, the attached affidavits and the supplemental affidavits, Mr. Epstein has clearly shown that (1) the defendant, Crossbow, intentionally and wrongfully exercised control or dominion over Mr. Epstein's personal property; (2) Mr. Epstein had an ownership or possessory interest in the property at the time of the alleged conversion; (3) Mr. Epstein was damaged by the defendant's, Crossbow's, conduct; and (4) if the defendant, Crossbow, legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's, Mr. Epstein's, demand for its return was refused.

Mr. Epstein notified Crossbow regarding Futuremed's conduct in writing, however no answer was ever received by Mr. Epstein from either Crossbow or Futuremed. (Complaint ¶ 42, Epstein's Supplemental Affidavit ¶ 17-19.)   Mr. Epstein notified both the Directors and Corporate officers of Crossbow in writing  and via e-mails on November 11, 2000. (Epstein Supplemental Affidavit ¶ 17-19, Epstein Supplemental Affidavit Exhibit J.)   Mr. Epstein's demand for return was obviously refused since he never heard back from Crossbow or Futuremed. Thus, Crossbow was on notice on November 11, 2000.  However, Crossbow never answered Mr. Epstein's inquiry regarding conversion of his proprietary information and trade secrets. If Crossbow was not converting Mr. Epstein's technology and trade secrets for its own use, then Crossbow owed a duty to Mr. Epstein to either investigate his claim or to give him the courtesy of a response. Instead, Mr. Epstein was left without answers.

Mr. Epstein is not merely "lumping" Crossbow in with the other defendants to demonstrate that a trade secret was converted.    (Crossbow Memorandum, p. 11.)    As demonstrated above, Mr. Epstein had a specific communication with Crossbow regarding this issue – namely, his November of 2000 letter. (Id.)

As a result, this Court should deny Crossbow's Motion to Dismiss Mr. Epstein's Conversion Count.   In the alternative, Mr. Epstein moves for leave of court to amend his complaint to plead his conversion complaint against Crossbow.  If the Court finds that Mr. Epstein has not plead this count properly, then, in the interests of justice, the Court should allow Mr. Epstein to amend his complaint.

### 3.    The Court Should Allow Mr. Epstein to Maintain his Unjust Enrichment Claim Against Crossbow (Count V).

The circumstances pertaining to the allegations of unjust enrichment set forth in the Complaint clearly surround each defendant, including Crossbow. The benefits obtained by Crossbow from the manufacturing, marketing and sale of the catheters based upon Mr. Epstein's trade secrets and technology were clearly unjust due to the fact that, as discussed in the Complaint and supporting documentation, the information utilized to manufacture the catheters, and subsequently market and sell the catheters, was improper. *Brandt v. Wand Partners*, 242 F.3d 6, 16 (1st Cir. 2001).

As a result, this Court should deny Crossbow's Motion to Dismiss Mr. Epstein's Unjust Enrichment Count.   In the alternative, Mr. Epstein moves for leave of court to amend his complaint to plead his unjust enrichment complaint against Crossbow.  If the Court finds that Mr. Epstein has not provided adequate factual predicates to this claim, the Court should grant leave to allow Mr. Epstein to amend his complaint to comply with the standards set forth in Fed. R. Civ. P. 8 and Fed. R. Civ. P. 9 (b).

**4.    The Court Should Allow Mr. Epstein to Maintain his Misrepresentation Claims Against Crossbow (Count VI and VII).**

Crossbow had a responsibility to check out and verify whether or not the proprietary information transferred from Bard to Futuremed actually belonged to Bard.  Crossbow, and Futuremed for that matter, relied on Bard's fraudulent representation that the information submitted to the United States Food and Drug Administration ("FDA") was based upon Bard's own proprietary information.    Clearly, as evidenced by Mr. Epstein's Complaint and corroborated in Affidavits supporting the Complaint, and Mr. Epstein's Supplemental Affidavit, Bard's representations to the FDA, as well as to Crossbow and Futuremed, were fraudulent. Bard's statements regarding the source of the FDA 510(k) disclosure were fraudulent. (Complaint ¶ 26-27, ¶ 31 and ¶ 47-48.)   Thus, Mr. Epstein's allegations of fraud against Crossbow are supported by Mr. Epstein's Complaint and corroborating Affidavits, as well as by Mr. Epstein's Supplemental Affidavit.

Further, as required by Fed. R. Civ. P. 9(b), Mr. Epstein has demonstrated the particularity of his claims.  Crossbow was informed of the allegations surrounding this case by Mr. Epstein in writing on November 11, 2000. (Epstein's Supplemental Affidavit ¶ 17-19 and Epstein's Supplemental Affidavit Exhibit J.) Crossbow wholly ignored Mr. Epstein, just like Bard and Futuremed ignored Mr. Epstein. Mr. Epstein has proven that Bard transferred Mr. Epstein's proprietary information to Futuremed without Mr. Epstein's knowledge or consent. (Epstein's Supplemental Affidavit ¶ 50, ¶ 53 ¶ 55-57.) Also, Mr. Epstein has proven that Futuremed received Mr. Epstein's proprietary information, such as Mr. Epstein's trade secrets and technology and then transferred it to its own use by manufacturing and offering for sale a catheter just like the one invented by Mr. Epstein. (Id. at ¶ 53, ¶ 55 ¶ 64 and ¶ 69.) Mr. Epstein

has demonstrated that Crossbow is an integral element of the Bard-Futuremed-Crossbow relationship and not the mere outsider to the transaction as it purports to be.

Because Futuremed and Crossbow neither responded to Mr. Epstein's inquiries nor made any investigation into his claims, Mr. Epstein has been as specific as possible in his claims using the facts that he is aware or and are at his disposal. As set forth in Mr. Epstein's Complaint and corroborated in Affidavits supporting the Complaint, and Mr. Epstein's Supplemental Affidavit, the fraudulent transfer of Mr. Epstein's proprietary information, technology and trade secrets from Bard to Futuremed occurred in Massachusetts. (Id. at ¶ 36-63.) Crossbow was aware of these activities as a result of Mr. Epstein's letter of November 11, 2000. (Epstein's Supplemental Affidavit ¶ 17-19, Epstein's Supplemental Affidavit Exhibit J.)

As set forth in Mr. Epstein's Complaint and corroborated in Affidavits supporting the Complaint, and Mr. Epstein's Supplemental Affidavit, Futuremed has manufactured a catheter that was copied from Mr. Epstein's trade secrets and technology and proprietary information. Futuremed was able to successfully manufacture the device only after Bard transferred Mr. Epstein's proprietary information to Futuremed. (Epstein's Supplemental Affidavit ¶ 27-28, ¶ 69.) Crossbow was aware of these activities as a result of Mr. Epstein's letter of November 11, 2000 and chose to take no action in response to Mr. Epstein's letter. (Epstein's Supplemental Affidavit ¶ 17-19, Epstein's Supplemental Affidavit Exhibit J.)

Bard's conduct is imputed to Crossbow because Crossbow is operating and doing business in the medical devices industry and markets. While, it is true that Crossbow never had any direct contact with Mr. Epstein, Crossbow obviously never contacted Mr. Epstein in an effort to evade and avoid Mr. Epstein and his questions. (Crossbow's Memorandum, p. 14.)

13

Mr. Epstein has clearly met the requisite standards of pleading pursuant to Fed. R. Civ. P. 9(b). As shown above, Mr. Epstein has particularly set forth facts entitling Mr. Epstein to relief specifically against Crossbow. Consequently, this Court should deny Crossbow's Motion to Dismiss Mr. Epstein's Misrepresentation and Negligent Misrepresentation Counts. In the alternative, if the Court finds that Mr. Epstein has not satisfied the requirements for pleading fraud in his complaint pursuant to Fed. R. Civ. P. 9(b), then Mr. Epstein moves for leave of court to amend his complaint to plead his misrepresentation complaint against Crossbow. Mr. Epstein moves for leave of Court to amend his Complaint in the interests of fairness and justice to Mr. Epstein.

**5.     The Court Should Allow Mr. Epstein to Maintain his Fraudulent Concealment Claim Against Crossbow (Count VIII).**

Mr. Epstein informed Futuremed and Crossbow that Futuremed was misrepresenting to the public that its catheters were constructed based on technology that was Futuremed's, when in fact, it was fraudulently concealing from others that its catheters were based upon a transfer of Mr. Epstein's proprietary information from Bard to Futuremed. (Id.) Crossbow's and Futuremed's fraudulent concealment of this fact from Mr. Epstein by not responding to his inquiries, as well as fraudulent concealment from the customers of Futuremed, clearly gives rise to the Mr. Epstein's claim. Mr. Epstein was not aware of this fact until he was advised by Mr. Bill Appling in 2002 that Futuremed was selling catheters which copied Mr. Epstein's proprietary technology in 2001. (Epstein's Supplemental Affidavit ¶ 27-28, ¶ 69.) Mr. Epstein's letters and e-mails of November 11, 2000 clearly put Crossbow on notice of the situation with Bard and Futuremed and Crossbow. (Epstein's Supplemental Affidavit ¶ 17-19, Epstein's Supplemental Affidavit Exhibit J.)

As discussed above, Bard's conduct is imputed to Crossbow because Crossbow is operating and doing business in the medical devices industry and markets. While, it is true that Crossbow never had any direct contact with Mr. Epstein, Crossbow obviously never contacted Mr. Epstein in an effort to evade and avoid Mr. Epstein and his questions. (Crossbow's Memorandum, p. 15.)

Crossbow failed to exercise reasonable care in producing and selling catheters based upon Mr. Epstein's proprietary information, trade secrets and technology that was transferred from Bard to Futuremed. Crossbow failed to exercise reasonable care even after they were made aware of the situation by Mr. Epstein in writing, failed to respond to Mr. Epstein, and failed to do anything about the situation. Crossbow only took affirmative steps to fraudulently conceal the fact that it made use of Mr. Epstein's proprietary information, trade secrets and technology. (Epstein's Supplemental Affidavit ¶ 17-19, Epstein's Supplemental Affidavit Exhibit J.)

Mr. Epstein has clearly met the requisite standards of pleading pursuant to Fed. R. Civ. P. 9(b). As shown above, Mr. Epstein has particularly set forth facts entitling Mr. Epstein to relief specifically against Crossbow. Consequently, this Court should deny Crossbow's Motion to Dismiss Mr. Epstein's Fraudulent Concealment Count. In the alternative, if the Court finds that Mr. Epstein has not satisfied the requirements for pleading fraud in his complaint pursuant to Fed. R. Civ. P. 9(b), then Mr. Epstein moves for leave of court to amend his complaint to plead his fraud complaint against Crossbow. Mr. Epstein moves for leave of Court to amend his Complaint in the interests of fairness and justice to Mr. Epstein.

**6.     The Court should allow Mr. Epstein to Maintain his Claim for Violation of M.G.L. 93A §§ 2, 11 (Count X).**

First Crossbow challenges whether the actions at issue occurred in Massachusetts in order to sustain an action under 93A. (Crossbow's Memorandum, p. 16.) As shown below, Count X

contains all of the necessary elements to meet with the requirements of Mass. Gen. L. ch. 93A as

pled.

> Mass. Gen. L. ch. 93A §11 stands for the proposition that:

> No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth. For the purposes of this paragraph, the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth.

Gen. Laws. ch. 93A, § 11. Further, *Kuwaiti Danish Computer Co. v. Digital Equipment Corp.*,

781 N.E.2d 787 (1st Cir. 2003), stands for the following proposition:

> Section 11 suggests an approach in which a judge should, after making findings of fact, and after considering those findings in the context of the entire § 11 claim, determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth.

*Kuwaiti Danish,* 781 N.E.2d at 799. *Kuwaiti Danish* also stands for the proposition that a 93A

claim must fail where the "pivotal events underlying [the] 93A claim" occurred outside

Massachusetts. *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 235-36 (1st Cir.

2003). Additionally, *Kuwaiti Danish* stated as follows:

> We have misgivings about the utility of a formula for analyzing all cases under § 11. **Whether the "actions and transactions [constituting the § 11 claim] occurred primarily and substantially within the commonwealth" is not a determination that can be reduced to any precise formula.** Significant factors that can be identified for one case may be nonexistent in another. Any determination necessarily will be fact intensive and unique to each case.

*Kuwaiti Danish,* 781 N.E.2d at 798 (emphasis added). Thus, the inquiry regarding the factual

bases supporting a 93A claim is not as simplistic as asserted, as no precise formula has been

accepted.

    As set forth in Mr. Epstein's Complaint and the supporting documentation, Bard took

possession of Mr. Epstein's trade secrets with illicit intent in Massachusetts. (Complaint ¶ 10-26;

Epstein's Supplemental Affidavit, ¶ 6, ¶ 36-47.)  Investigating the events leading up to the transfer of Mr. Epstein's trade secrets, Bard recognized the utility of Mr. Epstein's trade secrets to reach catheter specifications Bard consistently failed to achieve. (Complaint, ¶ 10-26; Epstein's Supplemental Affidavit, ¶ 6.)  On several occasions, multiple representatives of Bard visited Mr. Epstein's place of business in Massachusetts and viewed Epstein's trade secrets. (Epstein's Supplemental Affidavit, ¶ 36-47.)  Further, during these visits to Mr. Epstein's place of business, representatives of Bard entered into non-disclosure agreements. (Id. at ¶ 41.)  The visits by Bard's representatives culminated in Bard's removal from Mr. Epstein's place of business of many documents illustrative of Mr. Epstein's trade secrets. (Id. at ¶ 46.)

Thus, over a span of years, Bard acquired Mr. Epstein's trade secrets in Massachusetts and then swiftly transferred the secrets to Futuremed. (Id. at ¶ 6, ¶ 36-47.)  Clearly, using time as a basis for applying the "primarily and substantially within the Commonwealth" theory, an overwhelmingly inordinate portion of the complete transaction clearly occurred in Massachusetts. (Complaint ¶ 10-26, Epstein's Supplemental Affidavit, ¶ 6, ¶ 36-47.)

Therefore, Bard pursued Mr. Epstein's trade secrets in Massachusetts, viewed Mr. Epstein's trade secrets in Massachusetts and utilized the information in directing Futuremed, from Massachusetts, to produce the Tigertail for Bard's own purposes. (Epstein's Supplemental Affidavit ¶ 46.)  Thus Bard's plan was conceived and hatched upon the visits of the representatives of Bard to Mr. Epstein's place of business and because of this, Bard's actions in Massachusetts constitute the "pivotal events underlying [the] 93A claim" as these actions constitute the root of the entire scheme.

Further, as Crossbow and the several Defendants have wholly failed to answer any of Mr. Epstein's earnest inquiries, in order to discern what actually transpired, discovery will be needed.

17

Thus in order to fully comprehend the transfer technology under a "center of gravity" and "pivotal events" theories, discovery will be needed in order to discern what really occurred as Crossbow and the other Defendants still fail to come forward with any answers.

As a final inquiry,

> [t]he United States Court of Appeals for the First Circuit has adopted a three-prong balancing test that looks to (1) where the defendant commits the unfair or deceptive act or practice; (2) where the plaintiff receives or acts on the wrongful conduct; and (3) where the plaintiff sustained losses caused by the wrongful conduct.

*Kuwaiti Danish*, 781 N.E.2d at 798 (citation omitted). Applying the first prong, Bard clearly committed the unfair or deceptive act or practice upon Mr. Epstein in Massachusetts. Applying the second prong, Mr. Epstein received the wrongful conduct in Massachusetts. Applying the final prong, Mr. Epstein sustained losses caused by the wrongful conduct in Massachusetts. Therefore, all three of these prongs end toward the evolutions in Massachusetts and as such the majority of the plan was clearly formulated, initiated and completed in Massachusetts.

Following Crossbow's argument that the actions at issue did not occur in Massachusetts, Crossbow describes the transactions between Mr. Epstein and Bard as "private commercial dealings between private parties." (Crossbow Memorandum, p. 17.) Crossbow's allegation is incorrect. The transactions occurred in commerce and were hardly private since Bard, a corporate entity, dealt with Mr. Epstein and such transactions were obviously known throughout Bard corporate and its various divisions. If Crossbow claims no knowledge of Bard's transactions with Mr. Epstein, then Crossbow cannot allege that Mr. Epstein's transactions with Bard are merely private commercial dealings between private parties. Thus, Crossbow's reliance on the holding in *St. Paul Fire & Marine Ins. Co. v. Ellis & Ellis*, 262 F.3d 53, 67 (1st Cir. 2001) is misplaced. (Crossbow's Memorandum, p. 17.)

18

In addition, Crossbow's reliance upon *Szalla v. Locke*, 421 Mass. 448, 451 (1995) (disputes between parties in same venture do not give rise to Chapter 93A claim) is also misplaced. (Crossbow's Memorandum, p. 17.) Mr. Epstein has not been involved in the same ventures as Crossbow or Futuremed. Mr. Epstein's business relationship with Bard had ended by the time his claims under Chapter 93A rose. As soon as Mr. Epstein became aware that Futuremed and Crossbow were offering catheters for sale to the public, there was no longer a same venture between Bard and Mr. Epstein. (Epstein's Supplemental Affidavit ¶ 64-82.)

Crossbow's application of *Saint Gobain Indus. Ceramics v. Wellons, Inc.*, 246 F.3d 64, 73 (1st Cir. 2001), is also incorrect. (Crossbow's Memorandum, p. 17.) Mr. Epstein has evidence and can prove to a trier of fact that the acts of Bard, Futuremed and Crossbow complained of by Mr. Epstein have obtained, if not exceeded, the requirements set forth by the Massachusetts Courts when analyzing of Chapter 93A claims that "objectionable conduct [that] must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Saint Gobain Indus. Ceramics,* 246 F.3d at 73. Unlike the case at bar, *Saint Gobain* dealt with a breach of warranty, and the court found that the breach of warranty does not necessarily give rise to statutory violation for unfair or deceptive business practices. "It is clear that "Chapter 93A liability may exist if the defendant's conduct falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness' or is 'immoral, oppressive or unscrupulous. '" *Saint Gobain Indus. Ceramics ,* 246 F.3d at 73.

Crossbow argues that if parties' only contact occurred in context of litigation, no Chapter 93A claim lies *Arthur D. Little, Inc. v. East Cambridge Sav. Bank*, 35 Mass. App. Ct. 734, 743 (1994). (Crossbow's Memorandum, p. 18.) Mr. Epstein attempted to contact Crossbow previously in November 2000, however Mr. Epstein did not receive a response from Crossbow

19

until after the present litigation commenced. (Epstein's Supplemental Affidavit ¶ 17-19, Epstein's Supplemental Affidavit Exhibit J.) Mr. Epstein's contact with Bard dates back several years. (Complaint ¶ 14-26, ¶ 34-40 and ¶ 44-60.)

Therefore, under the elevated standard for dismissal established in *Rumford Pharmacy*, treating all allegations in the complaint as true and drawing all reasonable inferences therefrom in favor of the Mr. Epstein, the "pivotal events underlying [the] 93A claim" and "the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." See *Rumford Pharmacy*, 970 F.2d at 997. Therefore, Crossbow's Motion to Dismiss Count X should be denied and Mr. Epstein's Count X should be stand as pled. If the Court finds that Mr. Epstein has not provided adequate factual predicates to this claim, the Court should grant leave to allow Mr. Epstein to amend his complaint to comply with the standards set forth.

## III.    CONCLUSION

Based upon the aforementioned reasons, Crossbow's Motion to Dismiss should be denied. In the alternative, leave of Court should be granted to allow Epstein to amend his complaint to comply with the standards set forth in Fed. R. Civ. P. 8 and Fed. R. Civ. P. 9 (b).

Further, based on the above, Crossbow is not entitled to attorneys' fees and costs as Mr. Epstein has clearly demonstrated that this action is with merit. Crossbow fails to acknowledge the essential role it plays in the Bard-Futuremed-Crossbow transaction as well as the specific notification is received from Mr. Epstein with his November 11, 200 0 letter.

## IV.    REQUEST FOR ORAL ARGUMENT PURSUANT TO LOCAL RULE 7.1(d)

Plaintiff, Scott M. Epstein requests oral argument on this motion pursuant to Local Rule 7.1(d).

Dated: 2/18/2004

Attorney for Plaintiff

Gary E. Lambert, Esq.
LAMBERT & ASSOCIATES
92 State Street, Suite 200
Boston, MA 02109
Tel. 617-720-0091
Fax 617-227-0313

By:

Gary E. Lambert, Esq.
BBO#: 548,303