IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT M. EPSTEIN,<br><br>    Plaintiff,<br><br>v.<br><br>C.R. BARD, INC.,<br>FUTUREMED INTERVENTIONAL, INC., and<br>CROSSBOW VENTURES, INC.,<br><br>    Defendants. | Civil Action No. 03-cv-12297 (RWZ) |

**FUTUREMED'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS EPSTEIN'S COMPLAINT**

Michael A. Albert, BBO # 558566
Michael N. Rader, BBO # 646990
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 720-3500

COUNSEL FOR DEFENDANT
FUTUREMED INTERVENTIONAL, INC.

TABLE OF CONTENTS

I.    EACH OF EPSTEIN'S CLAIMS IS TIME-BARRED AS A MATTER OF LAW ............ 1

II.   EPSTEIN LACKS STANDING TO SUE ................................................................. 5

III.  THE COMPLAINT DOES NOT ALLEGE FACTS SUPPORTING A CLAIM AGAINST FUTUREMED UPON WHICH RELIEF CAN BE GRANTED ...................... 6

  A.   The Fraud Claims .......................................................................................... 6

  B.   The Trade Secret Claims ............................................................................... 9

  C.   The Unjust Enrichment Claim ..................................................................... 10

  D.   The Chapter 93A Claim .............................................................................. 10

IV.   AMENDMENT OF EPSTEIN'S COMPLAINT WOULD BE FUTILE .......................... 11

V.    CONCLUSION .................................................................................................... 12

Futuremed respectfully requests leave to file this Reply in Support of its Motion to Dismiss Epstein's Complaint. The Reply will help distill the relevant issues for the Court, and addresses admissions made in Epstein's opposition that create additional grounds for dismissal.

Plaintiff Epstein's own letters demonstrate that he knew the facts and circumstances underlying this lawsuit by October 10, 1999 – more than four years before he filed his complaint.

Epstein attempts to avoid the applicable statutes of limitations by arguing that, although he was aware of Bard's alleged misdeeds – misappropriating and then communicating his allegedly proprietary information to a "second source" manufacturer – he learned only later that this "second source" manufacturer was Futuremed.

As a matter of law, however, the limitations period began to run when Epstein became aware of the alleged misappropriation, *not* when he learned the identity of the alleged recipient of the trade secrets (Futuremed). His claims against Futuremed are indisputably time-barred.

Epstein's complaint should also be dismissed because he lacks standing to sue for misappropriation of alleged trade secrets that, according to Epstein himself, were owned (if at all) by another entity that is not a party to this suit.

Last, but certainly not least, Epstein's complaint fails to set forth facts sufficient to state a claim against Futuremed upon which relief can be granted.

## I.  EACH OF EPSTEIN'S CLAIMS IS TIME-BARRED AS A MATTER OF LAW.

As explained in Futuremed's opening brief (at 3), Epstein's October 10, 1999 letter to Bard establishes that (1) he was aware of Bard's continued sales of catheters allegedly embodying "intellectual property" belonging to his company (SME Design); (2) he had not sold such catheters to Bard in at least a year; and (3) he suspected that Bard had procured a "second source" whose manufacture of the catheters was not "licensed" or "approved" by SME Design.

These very same allegations form the basis for Epstein's claims against Futuremed in this case. See Complaint ¶ 38 ("BUD caused the disclosure of Epstein's technology to a third party, Futuremed … which in turn supplied Soft Tip catheters to BUD."); ¶ 39 (alleging that Bard "provided [Futuremed] with the specifications in order to supply BUD with the Soft Tip Tigertail catheter"); ¶ 50 ("BUD conveyed Epstein's specifications and … proprietary information to Futuremed, which then and now supplies BUD with a similar product Epstein supplied BUD.").

Accordingly, Epstein's letter establishes that the limitations period began to run on his claims by October 10, 1999. The "statute of limitations starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that *someone* may have caused her injury." Bowen v. Eli Lilly & Co., 557 N.E. 2d 739, 741 (Mass. 1990) (emphasis added). Put differently, the clock starts "when a reasonably prudent person … reacting to any suspicious circumstances of which he might have been aware … should have discovered that he had been harmed." Id. at 742. Here, Epstein not only "should have" discovered the alleged harm – he had actually done so, and had even conveyed a written accusation about the same.

Epstein's only response is that, although he suspected Bard of misappropriating and communicating his company's information to a "second source" manufacturer, he was not yet aware that this "second source" manufacturer was Futuremed. (Opp. at 3-8).

Epstein provides *no* authority for the proposition that he can delay the onset of the limitations period by claiming ignorance of Futuremed's identity – because there is none. As a matter of law, the limitations period began to run when Epstein became aware of the alleged misappropriation, *not* when he learned the identity of the alleged recipient of the trade secrets. Bowen, 557 N.E. 2d at 741 (clock starts with circumstances "reasonably likely to put the plaintiff on notice that *someone* may have caused her injury") (emphasis added).

- 2 -

The Supreme Judicial Court's <u>Bowen</u> decision was applied shortly thereafter by the Massachusetts Appeals Court in precisely the context raised here, answering the question "whether application of the discovery rule delays accrual of a cause of action until the plaintiff knows or should know the identity of the particular defendant claimed to be responsible for the harm." <u>Krasnow v. Allen</u>, 562 N.E. 2d 1375, 1379-80 (Mass. App. Ct. 1990).

On October 11, 1979, Janet Krasnow telephoned her psychiatrist, Dr. Prudence Allen, to relate that she had just taken an overdose of anti-depressant medication. Allen telephoned rescue personnel but provided them with an outdated address, resulting in some delay before those personnel were able to find Krasnow. Krasnow died the next day. <u>Id.</u> at 1376.

Krasnow's husband later filed suit against Allen. On July 26, 1984, Allen filed a motion for summary judgment, alleging (for the first time) immunity from liability as a public employee. The plaintiff, who was previously unaware of Allen's status as a public employee, immediately amended his complaint to add the Commonwealth of Massachusetts as a defendant. <u>Id.</u> at 1377.

The court ruled that the claim against the Commonwealth, having been brought five years after Krasnow's death, was time-barred. On appeal, the controlling question was "whether, applying the discovery rule, the plaintiff's cause of action against the Commonwealth 'accrued' on the date of Krasnow's death, as the Commonwealth contends, or on the date the plaintiff first discovered that Dr. Allen might be a public employee, as the plaintiff contends." <u>Id.</u> at 1379.

The Appeals Court held squarely that the claim accrued when Krasnow died because

> [f]rom then on the claim against Dr. Allen's public employer ... was not inherently unknowable. The plaintiff's knowledge was ***sufficient to stimulate further inquiry on his part about the claim***, including inquiry into the facts about Dr. Allen's employment status, and, thus, to start the running of the clock.

<u>Id.</u> at 1380 (emphasis added).

Thus, the limitations period is triggered *not* by actual knowledge of every defendant that is amenable to suit based on a particular set of facts and circumstances, but by knowledge that is "sufficient to stimulate further inquiry" as to the defendants' identities.[1] Epstein unquestionably had such knowledge on October 10, 1999, as evidenced by his own letter so stating.

Thus, the limitations periods for Epstein's tort claims and his Chapter 93A claim expired on October 10, 2002 and October 10, 2003, respectively. (Futuremed Br. at 4). Because Epstein did not file the present suit until October 15, 2003, each of his claims is time-barred and should be dismissed as a matter of law. LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998) ("Granting a motion to dismiss based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred.").[2]

Epstein harps repeatedly on the notion that Bard (and later Crossbow and Futurmed) declined to entertain a dialogue with him about his allegations. (Opp. at 3-8). The argument misses the mark completely – it was *not* Defendants that had a duty of inquiry, *but Epstein*. Krasnow, 562 N.E. 2d at 1380 (limitations period begins running when plaintiff has "knowledge ... sufficient to stimulate further inquiry ***on his part*** about the claim") (emphasis added). Epstein's attempt to blame the defendants for his own tardiness fails as a matter of law.[3]

---

[1] This is the rule in many other jurisdictions too. E.g., Clavette v. Sweeney, 132 F. Supp. 2d 864, 874 (D. Or. 2001) ("The Ninth Circuit has stated repeatedly the plaintiff need not also know the identity of the person who caused the injury.... the statute of limitations begins to run as soon as the plaintiff knows he or she has been injured and knows the physical cause of that injury."); Knauf v. Elias, 742 A.2d 980, 983 (N.J. Super. 1999) (The discovery "rule does not afford protection to a plaintiff [who] knows about the injury but cannot determine the tortfeasor's identity.").

[2] Epstein ratcheted up his rhetoric on January 6, 2000, explicitly accusing Bard of "conveying" his company's "trade secrets" to a third party, "demanding" to know the party's identity, and threatening to sue. (Futuremed Br. at 4). Even assuming, *arguendo*, that the limitations period did not begin running until January 6, 2000, every one of Epstein's tort claims is still time-barred, leaving just his Chapter 93A claim – which should be dismissed for the independent reasons discussed below in Section III(D).

[3] As noted in Futuremed's opening brief (at 5), although fraudulent concealment may toll the statute of limitations, tolling does *not* apply if – as here – the plaintiff has actual knowledge of the facts giving rise to his claim. Demoulas v. Demoulas Super Markets, Inc., 677 N.E. 2d 159, 174 (Mass. 1997). Epstein concedes this. (Opp. at 7). As discussed below, Epstein's fraudulent concealment count fails Rules 8 and 9(b), and should be dismissed.

## II.     EPSTEIN LACKS STANDING TO SUE.

In correspondence, Epstein insisted repeatedly that the alleged trade secrets at issue here belonged to a non-party to this suit -- either SME Design or Medical Device Labs. See Ex. A to Futuremed Br. (claiming that the "technology and concept is the intellectual property of SME Design"); Ex. J to Epstein Supp. Aff. (claiming that the "design, material specification [and] manufacturing process ... are the property of SME Design and Medical Device Labs, Inc.").

This claim is consistent with Epstein's explicit admission, in his opposition brief, that he was an employee of Medical Device Labs: "Mr. Epstein was both the President and Treasurer of MDL during the period of its incorporation." (Opp. at 9). As a matter of law, trade secrets resulting from an employee's inventions are, by default, owned by his employer. Milgrim on Trade Secrets § 5.02[4][a] (quoting Solomons v. United States, 137 U.S. 342 (1890): "Whatever rights as an individual he may have had in and to his inventive powers ... he has sold in advance to his employer."). Thus, Epstein's insistence that he never explicitly "conveyed his ... trade secrets" to the company (Opp. at 9; see also Epstein Supp. Aff. ¶ 35) is legally irrelevant.

The admission that Epstein worked as an employee of *an incorporated entity* ("MDL during the period of its incorporation")[4] also eviscerates Epstein's argument that he has standing to sue because he and his companies were "inseparable and synonymous." (Opp. at 9). Epstein may not take advantage of the corporate form for some purposes, while disregarding it, when inconvenient, for another. Nowhere has he suggested that there is any reason to disregard the corporate form here (e.g., failure to observe corporate formalities, under-capitalization, etc.).

---

[4] Epstein has also represented to the Court that his predecessor businesses was incorporated. See Complaint ¶ 2 (referring to "SME Design Technology, *Inc.*") (emphasis added).

In short, because Epstein was admittedly an employee of an incorporated entity when he invented the technology that he later came to claim as a trade secret, that trade secret is owned (if at all) by the company, a non-party to this suit. Epstein only has standing to sue in his own name if (a) the company assigned the trade secret back to him; or (b) circumstances indicate that the corporate form should be ignored. Because Epstein's complaint alleges neither (a) nor (b), it does not state a claim upon which relief can be granted. The complaint should be dismissed.

## III. THE COMPLAINT DOES NOT ALLEGE FACTS SUPPORTING A CLAIM AGAINST FUTUREMED UPON WHICH RELIEF CAN BE GRANTED.

As noted in Futuremed's opening brief, this motion may be decided based on the applicable statutes of limitations and Epstein's lack of standing (Sections I and II above). Should the Court reach the issue, however, it should find that the complaint fails to allege facts supporting a claim against Futuremed upon which relief can be granted.

### A. **The Fraud Claims**

Each of Epstein's fraud claims, Count VI ("Misrepresentation"), Count VII ("Negligent Misrepresentation") and Count VIII ("Fraudulent Concealment") must be pled with particularity pursuant to Rule 9(b). (Futuremed Br. at 9). Epstein concedes this. (Opp. at 14).

In a multiple-defendant case, facts amounting to actionable conduct must be pled against *each* defendant. E.g., Tower v. Leslie-Brown, 167 F. Supp. 2d 399, 403-04 (D. Me. 2001) (dismissing complaint against one of multiple defendants where the complaint provided "no insight on what wrongs Defendant Dolley allegedly has committed against Plaintiffs"). This is particularly true where the complaint alleges fraud. Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990) ("A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient.").

As demonstrated in Futuremed's opening brief (at 8-12), Epstein's complaint fails to allege the essential components of his fraud claims. His opposition brief clarifies that the allegations are absent because, quite simply, Epstein has no good faith basis for making them.

***Counts VI and VII: Misrepresentation and Negligent Misrepresentation.*** To make out a claim of "misrepresentation," Epstein's complaint must allege that Futuremed "made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon." <u>Danca v. Taunton Sav. Bank</u>, 429 N.E. 2d 1129, 1133 (Mass. 1982). To make out a claim of "negligent misrepresentation," the complaint must allege that Futuremed "failed to exercise reasonable care" in supplying "false information for the guidance of others ... in their business transactions." <u>Cummings v. HPG Int'l, Inc.</u>, 244 F.3d 16, 24 (1st Cir. 2001).

Epstein's complaint does not allege that Futuremed made *any* representations, let alone false representations intended to induce action by Epstein. Similarly, there is no allegation that Futuremed supplied Epstein with *any* – let alone false – information. (Futuremed Br. at 10-11).

Epstein's opposition brief reinforces that Counts VI and VII should be dismissed. Despite being presented with the standard for pleading these counts, Epstein still does not allege, anywhere in his opposition brief, that Futuremed undertook any of the activities that would be required to make out a claim of misrepresentation or negligent misrepresentation.

Indeed, on page 12, Epstein concedes that "Futuremed wholly ignored Mr. Epstein, just like Bard and Crossbow ignored Mr. Epstein" and that "it is true that Futuremed never had any direct contact with Mr. Epstein." He thus admits – *indeed insists* – that Futuremed did not make any representations, or convey any information, as required for Counts VI and VII.[5]

---

[5] Epstein attempts to impute *Bard's* alleged misrepresentations to Futuremed with the suggestion that Bard's statements can be "imputed to Futuremed because Futuremed is operating and doing business in the medical devices industry and markets." (Opp. at 12). The suggestion, unsupported by any authority, is frivolous.

- 7 -

Since Epstein does not (and concededly cannot) allege that Futuremed made false representations or conveyed false information, Counts VI and VII must be dismissed, and leave to amend would be futile. Tower, 167 F. Supp. 2d at 403-04; Sears v. Likens, 912 F.2d at 893.

**Count VIII: Fraudulent Concealment.** To make out a claim of "fraudulent concealment," Epstein's complaint must allege that Futuremed engaged in a "course of conduct designed to conceal evidence of [] alleged wrongdoing." J. Geils Band Employee Ben. Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1255 (1st Cir. 1996).

Count VIII of the complaint, however, makes bare bones allegations against "defendants" generally, with *no mention of Futuremed*. The gist of the "fraudulent concealment" claim is an alleged misrepresentation to the FDA by Bard (not Futuremed) and an alleged suppression by Bard (not Futuremed) of the purported fact that Bard applied for a patent using alleged "trade secrets" belonging to Epstein's company. (Futuremed Br. at 11). These allegations plainly do not state a claim against Futuremed.

In his opposition, Epstein responds with the internally inconsistent argument that Futuremed "concealed" from him its catheter sales (which were made on the open market) *after Epstein himself had brought such sales to Futuremed's attention in correspondence:*

> **Mr. Epstein informed Futuremed and Crossbow that Futuremed was misrepresenting to the public that its catheters were constructed based on technology that was Futuremed's**, when in fact, it was fraudulently concealing from others that its catheters were based upon a transfer of Mr. Epstein's proprietary information from Bard to Futuremed.... **Futuremed's fraudulent concealment of this fact from Mr. Epstein by not responding to his inquiries**, as well as fraudulent concealment from the customers of Futuremed, clearly gives rise to the [sic] Mr. Epstein's claim.

(Opp. at 13) (emphasis added).

- 8 -

Futuremed cannot possibly have "concealed" from Epstein information *that Epstein himself claims to have communicated to Futuremed* (i.e., the accusation that Futuremed's catheters were based on Epstein's company's trade secrets). Taken in the light most favorable to Mr. Epstein, the allegation does not come close to stating a claim for "fraudulent concealment." Count VII should be dismissed.

### B.  The Trade Secret Claims

***Count III: Misappropriation.*** To state a claim for trade secret misappropriation, Epstein's complaint must allege that Futuremed knew it possessed information proprietary to Mr. Epstein. See Mass. Gen. L. ch. 93 § 42. At most, however, the facts set forth in the complaint, namely that Bard asked Futuremed to make a certain type of catheter, would establish that Futuremed was an innocent recipient of information. (Futuremed Br. at 13). Moreover, Epstein admittedly sold his catheters on the open market (through Bard) long before Bard hired Futuremed -- destroying any trade secret Epstein might have claimed therein. (Id. at 12 n.13).

In response, Epstein makes the unsupported (and unsupportable) assertion that "[s]elling on the open market does not waive any rights and privileges in Mr. Epstein's trade secrets and technology or proprietary processes." (Opp. at 2).

Although unclear from his papers, Epstein's position appears to be that public sale of his company's catheters would not divulge "secret" information about how they were made. To set forth a colorable claim based on such information, Epstein would have to establish that (a) it was in fact a trade secret; and (b) it was not discernable by rigorous examination and reverse-engineering of the (publicly-available) product itself. Nowhere, however, does Epstein allege that one of skill in the art, examining the publicly-available catheter, would fail to appreciate how it was made. Count III cannot succeed as pled, and should be dismissed.

- 9 -

***Count IV: Conversion.*** Epstein's "conversion" claim carries the additional requirement that he show Futuremed exercised "control, ownership or dominion" over Epstein's "***personal property.***" <u>Cadle Co. v. Schlichtman</u>, 267 F.3d 14, 21 (1st Cir. 2001) (emphasis added).

Nowhere in his complaint does Epstein allege that Futuremed took possession of "personal property." To the contrary, the complaint alleges that the defendants "converted" *intangible* items: "technology, trade secrets and intellectual property." (Futuremed Br. at 14).

In response Epstein is unable to specify *any personal property of any kind* over which he claims that Futuremed exerted control. (Opp. at 15-16). Count IV fails as a matter of law, and Epstein's opposition demonstrates that leave to amend would be futile.

### C. The Unjust Enrichment Claim

Epstein's "unjust enrichment" claim (Count V) is pled generically against "defendants," says nothing about Futuremed, and fails even to allege the essential element that Futuremed retained an unjust "benefit." (Futuremed Br. at 15).

In his opposition (at 17), Epstein merely reiterates the generic language of the complaint, i.e., that the "circumstances pertaining to the allegations of unjust enrichment set forth in the complaint clearly surround each defendant, especially Futuremed." In the First Circuit, Rule 8 requires facts rather than mere conclusions. <u>The Dartmouth Review v. Dartmouth College</u>, 889 F.2d 13, 16 (1st Cir. 1989). Count V fails to state a claim upon which relief can be granted.

### D. The Chapter 93A Claim

In addition to being impermissibly vague, Epstein's Chapter 93A claim (Count X) fails because it does not allege, as required by statute, that the relevant events occurred "primarily and substantially in Massachusetts." Mass. Gen. L. ch. 93A § 11.

In his opposition brief, Epstein attempts to address this deficiency by asserting that *Bard* "took possession of Mr. Epstein's trade secrets with illicit intent in Massachusetts," and that *Bard* representatives "visited Mr. Epstein's place of business in Massachusetts." (Opp. at 18-19).

Epstein's opposition points to *not one single action* taken by Futuremed in, or in any way connected to, Massachusetts. (Id.). His Chapter 93A claim therefore fails as a matter of law, and should be dismissed. Reicher, D.P.M. v. Berkshire Life Ins. Co. of Am., 2002 U.S. Dist. Lexis 20763 (D. Mass. Oct. 29, 2002) (Zobel, J.) (granting motion to dismiss 93A claim based on events that did not occur primarily and substantially in Massachusetts); Am. Mgmt. Svcs., Inc. v. George S. May Int'l Co., 933 F. Supp. 64, 68 (D. Mass. 1996) (granting motion to dismiss where "there is no conceivable set of facts, reasonably consistent with the complaint, which would constitute violations of Chapter 93A taking place primarily and substantially in Massachusetts").[6]

## IV.  AMENDMENT OF EPSTEIN'S COMPLAINT WOULD BE FUTILE.

On several occasions, Epstein requests leave to amend his complaint if the Court concludes that the he has failed to allege facts supporting a claim against Futuremed upon which relief can be granted (see Section III above and Section II(C) in Futuremed's opening brief). Because each one of the Counts asserted by Epstein against Futuremed is indisputably time-barred, because Epstein lacks standing to sue, and because Epstein could not allege any facts against Futuremed that would state a claim upon which relief could be granted (as evidenced by his failure to adduce any such facts in his opposition to Futuremed's motion to dismiss), leave to make such amendments would be futile and should be denied.

---

[6] Epstein suggests that, despite failing to make any allegations of relevant activity by Futuremed in Massachusetts, he is nevertheless entitled to discovery. That, quite simply, is not the law. Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988) ("To permit a plaintiff, on such a skimpy foundation, to drag a defendant past the pleading threshold would be to invite litigation by hunch."), affirming, 678 F. Supp. 939 (D. Mass. 1987) (Zobel, J.).

## V.  CONCLUSION

For the foregoing reasons, Futuremed's Motion to Dismiss Epstein's Complaint should be granted.

Respectfully submitted,

FUTUREMED INTERVENTIONAL, INC.,

By its counsel,

Dated: March 8, 2004
/s/ Michael N. Rader
Michael A. Albert, BBO # 558566
Michael N. Rader, BBO # 646990
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 720-3500

## V. CONCLUSION

For the foregoing reasons, Futuremed's Motion to Dismiss Epstein's Complaint should be granted.

Respectfully submitted,

FUTUREMED INTERVENTIONAL, INC.,

By its counsel,

Dated: March 8, 2004

/s/ Michael N. Rader
Michael A. Albert, BBO # 558566
Michael N. Rader, BBO # 646990
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
(617) 720-3500