UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SCOTT M. EPSTEIN,                    :
                                     :
                Plaintiff,           :
                                     :
        v.                           :    Civil Action No. 03/12297 (RWZ)
                                     :
C.R. BARD, INC., FUTUREMED           :
INTERVENTIONAL, INC., and            :
CROSSBOW VENTURES, INC.,             :
                                     :
                Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

# CROSSBOW VENTURES INC.'S
# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# <u>MOTION TO DISMISS THE VERIFIED COMPLAINT</u>


                                           Michael A. Albert, BBO # 558566
                                           Michael N. Rader, BBO # 646990
                                           Local Counsel for Defendant CROSSBOW
                                           VENTURES INC.
                                           Wolf, Greenfield & Sacks, P.C.
                                           600 Atlantic Avenue
                                           Boston, Massachusetts 02210-2206
                                           617-720-3500

Counsel:     Samuel D. Levy (SDL 9271)
                Admittance *pro hac vice*
                CROSSBOW VENTURES INC.
                Wuersch & Gering LLP
                11 Hanover Square, 19th Floor
                New York, New York 10005
                212-509-5050

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

A. The Claims Against Crossbow Are Time Barred. ........ 3

B. Plaintiffs Cannot Impute FutureMed's Conduct to Crossbow ........ 6

C. Epstein Cannot Maintain his Tort Claims Against Crossbow ........ 8

CONCLUSION ........ 13

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SCOTT M. EPSTEIN,                             :
                                              :
                    Plaintiff,                :
                                              :
        v.                                    :    Civil Action No. 03/12297 (RWZ)
                                              :
C.R. BARD, INC., FUTUREMED                    :
INTERVENTIONAL, INC., and                     :
CROSSBOW VENTURES, INC.,                      :
                                              :
                    Defendants.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### CROSSBOW VENTURES INC.'S
### REPLY MEMORANDUM OF LAW IN SUPPORT OF
### MOTION TO DISMISS THE VERIFIED COMPLAINT

#### PRELIMINARY STATEMENT

Pursuant to Rule 7.1 of the Local Rules of Civil Procedure, defendant Crossbow Ventures Inc. s/h/a Crossbow Ventures, Inc. respectfully requests the Court's permission for leave to submit this Reply Memorandum of Law to plaintiff Scott M. Epstein's February 18, 2004 Memorandum in Opposition to Crossbow's Motion to Dismiss the October 14, 2003 Verified Complaint ("Epstein's Brief").

Epstein announces a number of times that Crossbow is an *"integral"* part of this lawsuit, yet the 27 page Verified Complaint, combined now with Epstein's 21 page Brief, still includes only one allegation that Crossbow, a Florida investment advisor, is the "parent" of defendant FutureMed. This allegation is wrong.

Epstein's contention that Crossbow's website casts ambiguity over its relationship with FutureMed also is wrong, further demonstrating Crossbow's remoteness to this action, and

Page 1 of 13

further confirming that the only reason Crossbow even was named is because Epstein located it when undertaking an Internet search of FutureMed.

Despite ample time and opportunity, Epstein has not – and cannot – demonstrate that Crossbow is FutureMed's "parent," or that Crossbow had anything to do with the allegations in this lawsuit. Epstein has not made this showing because Crossbow is an investment advisor to a limited partnership that is a passive investor in FutureMed. Crossbow had no other involvement in this matter.

Epstein has not demonstrated that Crossbow or its managed fund acted to control, participate in, direct, or become involved in any activities of FutureMed, a minimum showing to impute to a shareholder liability for corporate conduct. This failure, combined with the untimeliness of the claims against Crossbow, requires dismissal of the Verified Complaint.

## ARGUMENT

Epstein confesses that no business or other relationship exists between Crossbow and Epstein. (See Epstein's Brief, p. 2). Thus, at best, acknowledges Epstein, Crossbow is liable only if the alleged conduct of Bard or FutureMed is imputed to Crossbow. But the only thing argued by Epstein is that Crossbow must have had something to do with FutureMed or Bard because Crossbow's website indicates FutureMed is a "portfolio company." (Epstein's Brief p. 3).

Had Epstein studied Crossbow's website more carefully, he may have learned, as he did in Crossbow's moving papers, that Crossbow is a venture capital firm managing its investors' money through two managed funds, one of which, Crossbow Venture Partners LP, invested in FutureMed. (See affidavit of Stephen J. Warner, President of Crossbow Ventures Inc. ("Warner Affdvt.") ¶¶ 2-5, previously submitted as Ex. 1). The disclosure on the website

(*www.crossbowventures.com*) therefore is no different than was reported in Crossbow's moving papers.

There is a reason the Verified Complaint only mentions Crossbow one time: Crossbow had nothing to do with the allegations in this lawsuit, and no dealings with FutureMed, other than as an advisor to an investor. If Epstein could sustain his claims against Crossbow by merely alleging, wrongly as it turns out, that Crossbow is the "parent" of FutureMed, at least some authority would be advanced by Epstein to support this theory. Instead, Epstein simply suggests an alleged ambiguous "relationship" is enough to implicate Crossbow. (Epstein's Brief pp. 3, 4).

### A.   The Claims Against Crossbow Are Time Barred

Epstein maintains that his October 10, 1999 and January 6, 2000 letters about the misappropriation of Tigertail catheters (see Exs. A-C annexed to FutureMed's Motion to Dismiss Epstein's Complaint ("FutureMed's Brief")) were merely notices to Bard, not Crossbow or FutureMed. (See Epstein's Brief, pp. 4-5). Thus, argues Epstein, the claims against Crossbow are not time barred because Epstein's first written communication to Crossbow was in November 2000. (Id.; see Epstein Supplemental Affidavit ¶¶ 16-21; Ex. J; but see United States v. Kubrick, 444 U.S. 111, 124 (1979) (limitations period begins to run regardless of whether plaintiff makes inquiry and regardless of whether plaintiff is correctly advised)).

Massachusetts generally adopts the "discovery rule" for determining when a cause of action accrues. Cambridge Plating Co. v. NAPCO, Inc., 991 F.2d 21, 25 (1st Cir. 1993); Fiddler v. Eastman Kodak, 714 F.2d 192, 199 (1st Cir. 1993) ("notice of likely cause is ordinarily enough to start the statute running"); Zamboni v. Aladan Corp., No. 98-30109, 2004 U.S. Dist. LEXIS 2675 (D. Mass. February 20, 2004). This rule provides that regardless of the

actual time of breach or injury, "a cause of action does not accrue until a plaintiff discovers, or reasonably should have discovered, that she may have been injured as a result of the defendant's conduct." Hoult v. Hoult, 792 F. Supp. 143, 144 (D. Mass. 1992). As stated by the Massachusetts Supreme Judicial Court:

> *This court has recognized the unfairness of a rule that holds that the statute of limitations has run even before a plaintiff knew or reasonably should have known that she may have been harmed by the conduct of another. We, therefore, have developed (in the absence of a governing statute) a discovery rule for the purpose of determining when a cause of action accrues, and thus when the statute of limitations starts to run. This rule prescribes as crucial the date when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or may have been harmed by the defendant's conduct. . . The important point is that the statute of limitations starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury.*

Bowen v. Eli Lilly & Co., Inc., 408 Mass. 204, 206-207 (1990).

Epstein's October 1999 letters evidence his knowledge of the claims in this action, which renders the Counts against Crossbow time-barred under Mass Gen. L. ch. 260 §§ 2A, 5A because this lawsuit was not commenced until October 15, 2003. See Lareau v. Page, 39 F.3d 384, 388 (1st Cir. 1994) (under Massachusetts law, limitations period begins to run when events place person on notice of injury); Tagliente v. Himmer, 949 F.2d 1, 4 (1st Cir. 1991) (action accrues when party knew of should have known of factual basis); Cofer v. Sunoco, Inc., No. 00-10277 (RWZ), Memorandum Decision (D. Mass. March 11, 2002) (same).

Epstein in the second paragraph of the October 1999 letters inquires why Bard is appropriating intellectual property of Epstein. (See FutureMed's Brief, Exs. A, B). Clearly, these statements communicate Epstein's belief that Bard misappropriated Epstein's Tigertail catheter, an argument punctuated by Epstein's use of the ™ symbol in the letters. Id.

Further, Epstein's January 6, 2000 letter actually threatens litigation because the October 1999 letters and subsequent exchanges did not resolve the misappropriation dispute. (Id. at Ex. C). This letter, to which Epstein's counsel is copied, further outlines the legal theory of Epstein's lawsuit, including claims that certain agreements were violated. Id. Thus, the January 6, 2000 letter confirms the legal demands of the October 10, 1999 letters, all of which clearly demonstrate Epstein's knowledge of his claims more than four years before filing his lawsuit.

Given the threats and allegations in the October 1999 and January 2000 letters to Bard, Epstein was aware of the claims now asserted in the Verified Complaint at least as early as October 1999. Id. Thus, under the Massachusetts "discovery rule," the statute of limitations began to run, at the latest, when Epstein became aware of his claims. Bowen v. Eli Lilly & Co., Inc., 408 Mass. at 208 ("We do not require that a plaintiff have notice of a breach of a duty before a cause of action may accrue, but we do require that a plaintiff have (1) knowledge or sufficient notice that she was harmed and (2) knowledge or sufficient notice of what the cause of harm was.").

Indeed, it is likely Epstein knew of his claims even earlier, given the statement in the October 1999 letters that he *"many times [ ] thought of calling."* (See FutureMed's Brief, Exs. A, B). But even assuming October 1999 was the first time Epstein learned of the conduct underlying his lawsuit, Epstein's claims are still time barred. Bowen v. Eli Lilly & Co., Inc., 408 Mass. at 208.

Epstein's statute of limitations defense is not augmented by a single case citation. That is likely because Epstein knew at least as early as October 1999 of the claims in this lawsuit, and "[u]nder Massachusetts law, the statute of limitations in tort actions begins to run at

the time of the injury or when the injury becomes known to the plaintiff." Deisenroth v. Numonics Corp., 997 F. Supp. 153, 157 (D. Mass. 1998). See U.S. v. Rockland Trust Co., 860 F. Supp. 895, 904 (D. Mass 1994); Joseph A. Fortin Constr., Inc. v. Massachusetts Housing Finance Agency, 392 Mass. 440, 443 (1984); Pagliuca v. City of Boston, 35 Mass. App. Ct. 820, 824 (1994).

The tort claims against Crossbow (Counts III, IV, V, VI, VII, VIII) have a three-year statute of limitations, and the Chapter 93A (Count X) claim is four years, see Mass Gen. L. ch. 260 §§ 2A, 5A. The October 1999 letters, confirmed by Epstein's January 6, 2000 letter (FutureMed Brief, Exs. A-C), clearly indicate Epstein's actual knowledge of the claims now asserted against Crossbow. Thus, the claims should have been brought, at the latest, by October 10, 2002. Id. As the Verified Complaint was filed October 15, 2003, all of the claims against Crossbow are time-barred, and should be dismissed.

**B.     Plaintiffs Cannot Impute FutureMed's Conduct to Crossbow**

Epstein contends (at p. 7 of his Brief) that *"Crossbow is unable to prove that it is separate from Futuremed or that it did not direct Futuremed's actions."* Epstein apparently ignores the Warner Affdvt. that expressly refutes Epstein's claim that Crossbow is FutureMed's "parent."

Epstein also suggests that because Crossbow did not reply to his letters, there is *"serious ambiguity about the manner and capacity in which [Crossbow and FutureMed] were acting."* (See Epstein's Brief, p. 7). To the extent this conclusory statement even confers a legal argument, it is refuted by the Warner Affdvt., the only admissible evidence concerning this issue. (See Warner Affdvt. ¶¶ 4-5). Epstein has not and cannot refute that Crossbow is an investment

advisor to a managed fund that invested in FutureMed, which fact also is confirmed by Crossbow's website. Id.

Merely because Crossbow did not respond to letters, written incidentally to the investment advisor rather than to the managed fund that placed the investment, does not mean FutureMed and Crossbow have a secret relationship. Nor does Crossbow's silence impute to it the conduct of FutureMed. Burnet v. Clark, 287 U.S. 410, 415 (1932) ("A corporation and its stockholders are generally to be treated as separate entities").

To the contrary, the Warner Affdvt. resolves any alleged ambiguity, and confirms the only relationship Crossbow has with FutureMed is that it is an advisor to a managed fund that is a FutureMed stockholder.[1] Surely this is not the type of relationship that, by attribution, renders Crossbow responsible for the actions of FutureMed. Id. Indeed, if such an investment advisor could be liable in this manner, Epstein would have adduced at least one supporting authority.[2]

The Court instead should rely on the ample authority advanced by Crossbow that requires Epstein to demonstrate certain facts to support a veil piercing theory against Crossbow.

---

[1] At p. 9 of his Brief, Epstein curiously cites the New Jersey case IBS Fin. Corp. v. Seidman & Assocs., L.L.C., 954 F. Supp. 980 (D.N.J. 1997) for the proposition that 'control' does not mean day-to-day management of a portfolio company. Epstein's cite actually is to a Loss & Seligman treatise, Fundamentals of Securities Regulation (3d ed. 1995), referred to by the Court to ascertain whether an SEC Item 4, Schedule 13D filing required disclosure of an investor. Id. at 987. The District Court, relying upon various operating agreements between investment companies, ruled against the plaintiff's 'control' argument in determining whether the entity, Seidcal, had sufficient 'control' over an LLC that invested in the plaintiff savings and loan association. Id. But even more curious is that Epstein failed to observe that this part of the District Court's decision was reversed. In IBS Fin. Corp. v. Seidman & Assocs., L.L.C., 136 F.3d 940, 947 (3d Cir. 1998), the Third Circuit Court of Appeals, abandoning the Loss & Seligman 'control of a portfolio' reference by the District Court, reversed the District Court, concluding that under Schedule 13D, Seidcal had a controlling interest sufficient enough for disclosure under the law. Id. Epstein's brief contains no subsequent appellate treatment of this decision.

[2] Even if Crossbow was FutureMed's "parent," Futuremed's conduct cannot be imputed to Crossbow. See U.S. v. Bestfoods, 524 U.S. 51, 55-56 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation is not liable for the acts of its subsidiaries.") quoting Douglas & Shanks, Insulation From Liability Through Subsidiary Corporations, 39 Yale L.J. 193 (1929).

See, e.g., Birbara v. Locke, 99 F.3d 1233 (1st Cir. 1996); Dale v. H.B. Smith Co., Inc., 910 F. Supp. 14, 18 (D. Mass 1995); Spaneas v. Travelers Indem. Co., 423 Mass. 352 (1996); My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614 (1968); Leatherbee Mort. Co. v. Cohen, 37 Mass. App. Ct. 913 (1994).

As Epstein has not alleged in the Verified Complaint that Crossbow controls or participates in the control of FutureMed, the claims against Crossbow should be dismissed. Epstein has had ample opportunity to investigate whether Crossbow actually controls FutureMed, contrary to the Warner Affdvt., as well as Crossbow's role in the entire affair concerning the Tigertail catheter. Instead of undertaking such an investigation however, Epstein now asks for leave to amend the Verified Complaint to include allegations of Crossbow's alleged control of FutureMed, even though he clearly has no evidence of such control. (See Epstein's Brief p. 8). The Court should deny this request as futile because Crossbow and its managed fund will clearly demonstrate against the amended complaint the same thing shown in response to the current pleading: they do not control FutureMed and are not involved in the allegations comprising the claims in this litigation.

Since there is no allegation Epstein believed he was dealing with Crossbow, or that Crossbow directed, controlled, or persuaded the activities of FutureMed (see Verified Complaint), the claims against Crossbow should be dismissed. Id. See also Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10 (1st Cir. 1985) (citations omitted).

C.     **Epstein Cannot Maintain his Tort Claims Against Crossbow**

Epstein has failed to show in his one paragraph misappropriation (Count III) argument, as required, that he had (i) a confidential relationship with Crossbow; (ii) shared a trade secret; which (iii) Crossbow improperly disseminated. Burten v. Milton Bradley Co., 763

F.2d 461, 463 (1st Cir. 1985) citing Restatement of Torts § 757 (1939); R. Milgrim, Trade Secrets § 7.07[1] (1984); DB Riley v. AB Eng'g Corp., 977 F. Supp. 84, 89 (D. Mass. 1997); Brown v. Armstrong, 957 F. Supp. 1293, 1296 (D. Mass.), aff'd, 129 F.3d 1252 (1997); Jet Spray Cooler, Inc. v. Crampton, 361 Mass. 835 (1972). See Mass. Gen. L. ch. 93 § 42 (claim requires intent to convert improperly obtained trade secret).

Epstein acknowledges no relationship with Crossbow (Epstein's Brief p. 2). It appears Epstein's only knowledge of Crossbow is through an Internet search of FutureMed, in which the Crossbow website was located. Given Epstein's failure to show a confidential relationship with Crossbow, or even the slightest indication that Crossbow possessed or disclosed an Epstein trade secret, combined with Epstein's failure to cite even one case in support of this theory, Count III should be dismissed. Id. See also, Data Gen. Corp v. Grumman Sys. Support Corp., 36 F.3d 1147, 1165 (1st Cir. 1994); J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 357 Mass. 728, 737-739 (1970).

A similar fate awaits Count IV, conversion. Epstein has not shown that Crossbow exercised control, ownership, or dominion over Epstein's personal property. Cadle Co. v. Schlichtmann, 267 F.3d 14, 17 (1st Cir. 2001), cert. denied, 535 U.S. 1018 (2002). Even Epstein's Supplemental Affidavit does not go that far. Instead, the only thing alleged is that Epstein wrote to Crossbow, but the letters were ignored. Of course, Epstein does not claim Crossbow had an obligation to respond to Epstein's letter informing Crossbow of Bard's alleged conduct. This is likely because Epstein has not shown that Crossbow possessed anything that was owned by Epstein. See Evergreen Marine Corp. v. Six Consignments of Frozen Scallops, 4 F.3d 90, 94 (1st Cir. 1993).

Epstein has not and cannot prove that Crossbow possessed or controlled the Tigertail catheter, a required showing. Id. Thus, Count IV should be dismissed.

Epstein's unjust enrichment claim (Count V) still lacks any proof that Crossbow used or even knew of Epstein's "technology," "trade secrets," or "intellectual property." Epstein does not state how Crossbow was unjustly enriched, what benefit it allegedly – and actually – derived, or even how Crossbow profited from such enrichment, if at all. The Court also should reject Epstein's request for leave to amend the complaint, as such amendment would be futile because Epstein cannot show any benefit, direct or indirect, Crossbow received from the alleged misappropriation by Bard.

The misrepresentation claims (Counts VI, VII) against Crossbow similarly should be dismissed because Epstein must show Crossbow made a false statement of a material fact that was intended to induce Epstein to act, and that Epstein relied on the false statement. Zimmerman v. Kent, 31 Ma. App. Ct. 72 (1991); Danca v. Taunton Sav. Bank, 385 Mass. 1 (1982). Epstein only alleges that Crossbow had an obligation to investigate Bard's statements to the FDA (Epstein's Brief p. 12), and that since Crossbow ignored Epstein's letter, this is tantamount to a misrepresentation. Id. This remarkable theory is abandoned by any authority because Epstein cannot refute that under Massachusetts law, he must show Crossbow made an intentional or negligent misrepresentation to the FDA or to Epstein, upon which statements Epstein relied. Id. It is not enough to allege Crossbow had a duty to investigate the conduct of a company in which its managed fund placed an investment. See Cummings v. HPG Int'l, Inc., 244 F.3d 16 (1st Cir. 2001); Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 72 F.3d 190, 199-200 (1st Cir. 1995), cert. denied, 517 U.S. 1245 (1996). In fact, there is no allegation Crossbow made a representation to anybody. (See Verified Complaint). DM Research, Inc. v. College of Am.

Pathologists, 170 F.3d 53, 56 (1st Cir. 1999) (more than suspicion of a party's involvement is required; specific facts must be pleaded).

Epstein must show that Crossbow made some type of misrepresentation, rather than hope one appears during discovery. Id. See McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228 (1st Cir. 1980). Indeed, even if Crossbow was aware of the activities complained of in Epstein's letter, such knowledge is not tantamount to a misrepresentation nor conduct to which negligence can be imputed, a theory for which no support is offered. See Suna v. Bailey Corp., 107 F.3d 64, 68 (1st Cir. 1997).

Count VI and Count VII also should be dismissed because Epstein has not alleged with particularity that he – or others – relied on any statements by Crossbow, and that such statements induced Epstein to act. Id. See Sebago, Inc. v. Beazer East, Inc., 18 F. Supp.2d 70, 95 (D. Mass 1998) (negligent misrepresentation to be pleaded with particularity); Whelan v. Intergraph Corp., 889 F. Supp. 15, 19-20 (D. Mass. 1995) (misrepresentation to be pleaded with particularity). Epstein has failed to meet the particularity requirements of Fed. R. Civ. Proc 9(b) by not specifying the statements that are alleged to have been fraudulent, who made them, and when they were made.

Epstein now asserts in support of his Count VIII (fraudulent concealment) claim that Crossbow had an obligation to publicly disclose Epstein's belief that Bard's catheters were based on misappropriated technology. (See Epstein's Brief p. 14). Or, Epstein asserts Crossbow had an obligation to confirm it had no knowledge of Bard's technology when Crossbow received Epstein's letter. Id. This disjunctive argument is not supported by a single case citation.

A claim for fraudulent concealment requires Epstein to prove Crossbow took affirmative steps to conceal material facts. J. Geils Band Employee Benefit Plan v. Smith

Barney Shearson, Inc., 76 F.3d 1245, 1255 (1st Cir.) (fraudulent concealment to be pleaded with particularity) cert. denied, 519 U.S. 823 (1996); Roadmaster Indus., Inc. v. Columbia Mfg Co., Inc., 893 F. Supp. 1162, 1179 (D. Mass. 1995) citing Henshaw v. Cabeceiras, 14 Mass. App. 225, 227, appeal denied, 387 Mass. 1103 (1982).  There is no authority that ignoring Epstein's letter is tantamount to failing to disclose material facts.  To the contrary, Epstein must show the specific facts known to Crossbow, and that Crossbow did something to conceal them.  Id.

Epstein has not even attempted to demonstrate a fiduciary duty with Crossbow, a required showing for a claim for fraudulent concealment. See Walsh v. Chestnut Hill Bank & Trust Co., 414 Mass. 283, 288 (1993), n.6 citing subsec. 2, Restatement (Second) of Torts § 551.

Epstein's Massachusetts Unfair Trade Practices Act claim (Count X) also is doomed because there is no allegation that Crossbow entered into Massachusetts and unfairly competed with Epstein, a requirement to sustain the Chapter 93A claim.  Crossbow does not dispute that Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459 (2003)[3] discusses the 'center of gravity' approach with Chapter 93A claims, but, at a minimum, Epstein still has to allege Crossbow committed an act which "occurred primarily and substantially within the commonwealth." Mass. Gen. Laws ch. 93A § 11 (2002).  Id. at 473-474.

The only allegations about conduct in Massachusetts, both in the Verified Complaint and Epstein's Brief (pp. 16-18), pertain to Bard.  But Massachusetts courts require immoral, oppressive, or unscrupulous conduct that occurred in Massachusetts. Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 234 (1st Cir. 2003).  There is no allegation against Crossbow that its conduct was immoral, oppressive, or unscrupulous, or even that such conduct took place in the Commonwealth.

---

[3] This is a Supreme Judicial Court of Massachusetts case, not a 1st Circuit authority as cited by Epstein's Brief, p. 16.

It is not sufficient for Epstein to suggest that discovery is required to discern Crossbow's actual involvement in Massachusetts because the Warner Affdvt. diffuses any suggestion that Crossbow entered the Commonwealth to harm Epstein.

Epstein advances no authority that would impute to Crossbow the conduct of Bard or even FutureMed with regard to the Chapter 93A claim. The only thing offered by Epstein is conduct attributed to Bard, which conduct is alleged to have taken place in Massachusetts. There is no allegation that Crossbow, a Florida investment advisor to none of the parties, ever entered Massachusetts in connection with the activities complained of in the Verified Complaint. Count X therefore should be dismissed.

## CONCLUSION

For the reasons set forth above, together with the arguments advanced in Crossbow's Memorandum in Support of its Motion to Dismiss the Verified Complaint, all of the claims against Crossbow should be dismissed.

Dated: Boston, Massachusetts
March 8, 2004

WOLF, GREENFIELD & SACKS, P.C.

/s/ Michael N. Rader
Michael A. Albert, BBO # 558566
Michael N. Rader, BBO # 646990
Local Counsel for Defendant CROSSBOW VENTURES INC.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
617-720-3500

Counsel: Samuel D. Levy (SDL 9271)
Admittance *pro hac vice*
CROSSBOW VENTURES INC.
Wuersch & Gering LLP
11 Hanover Square, 19th Floor
New York, New York 10005
212-509-5050