UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT M. EPSTEIN,<br><br>                Plaintiff,<br><br>v.<br><br>C.R. BARD, INC., *et al.*,<br><br>                Defendants. | Civil Action No. 03 CV 12297 (RWZ) |

**BARD'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTS II, III, IV, V, VI, VII, VIII AND X OF PLAINTIFF'S COMPLAINT**

Andrew Good, BBO # 201240
Matthew Zisow, BBO # 658726
GOOD & CORMIER
83 Atlantic Avenue
Boston, MA 02110
Tel. (617) 523-5933
Fax (617) 523-7554

*Counsel for defendant C.R. Bard, Inc.*

**TABLE OF CONTENTS**

I.  EPSTEIN'S TORT CLAIMS AND HIS 93A CLAIM
    ARE TIME-BARRED AS A MATTER OF LAW ................................................................- 1 -

II. EPSTEIN'S FRAUD CLAIMS LACK 9(b) PARTICULARITY .........................................- 5 -

      Misrepresentation and Negligent Misrepresentation .......................................- 6 -

      Fraudulent Concealment ..................................................................................- 7 -

III. EPSTEIN ADMITS THAT COUNT II LACKS AN ESSENTIAL ELEMENT ..................- 8 -

IV. COUNT X LACKS AN ESSENTIAL ELEMENT .................................................................- 9 -

V.  COUNTS VI, VII AND VIII ARE PRE-EMPTED .............................................................- 11 -

VI. CONCLUSION .......................................................................................................................- 12 -

Pursuant to LR. 7.1(b)(3), Bard respectfully requests leave of Court to file this Reply in Support of its Motion to Dismiss Counts II, III, IV, V, VI, VII, VIII and X of Scott Epstein's Complaint.

Epstein filed the instant Complaint on October 15, 2003. Over four years prior, Epstein and his attorney, Gary Lambert, sent to Bard a series of letters in which Epstein demonstrated actual knowledge of the same allegations he makes in the Complaint. Epstein and Lambert threatened to file that Complaint unless Bard gave them money. Bard refused to give Epstein money because his allegations were then, as now, utterly baseless. Epstein filed suit. As his own words conclusively demonstrate, he did so too late.

In his reply, Epstein attempts to sidestep the statute-of-limitations issue by mischaracterizing the content of his own letters. For the reasons discussed below, he fails.

Although the statute-of-limitations defense is dispositive, Epstein's tort and 93A claims are fatally flawed in several other respects. He fails to plead fraud with the requisite particularity; he claims that Bard tortiously interfered with its own contract with Epstein; he alleges that Bard violated ch. 93A § 11 without alleging that the violation occurred "primarily and substantially" in Massachusetts; he offers the functional equivalent of *no response at all* to Bard's argument that three of his claims are, per *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), impliedly pre-empted by federal law.

## I. EPSTEIN'S TORT CLAIMS AND HIS 93A CLAIM ARE TIME-BARRED AS A MATTER OF LAW

In the memorandum accompanying its Motion to Dismiss ("Mem."), Bard argued that each of Epstein's tort claims and his 93A claim should be dismissed because each is time-barred as a matter of law. Mem. at 4-8.

Epstein's own words warrant dismissal on this ground. In a letter he sent to Bard on October 10, 1999, Epstein admitted that "events ha[d] occurred that were reasonably likely to put [him] on notice that someone may have caused [him] injury." *Bowen v. Eli Lilly Co., Inc.*, 557 N.E.2d 739, 741 (Mass. 1990). Specifically, Epstein knew that Bard had obtained additional inventory of the Bard Tigertail® Ureteral Catheter from a second-source manufacturer without having first obtained Epstein's permission. In Epstein's view, Bard could not have done so without tortiously misappropriating Epstein's alleged "intellectual property" in the Tigertail®.

Over four years later, on October 15, 2003, Epstein filed a complaint in which he accused Bard of doing just that: tortiously misappropriating his trade secrets in violation of G.L. ch. 93A. In that the statute of limitations governing his seven tort claims expired on October 10, 2002 (three years after the letter), and that governing his 93A claim expired on October 10, 2003 (four years after the letter), each of those claims in Epstein's October 15, 2003 complaint must be dismissed. Mem. at 4; *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998) ("Granting a motion to dismiss based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred.").

Epstein's response is meritless. He claims that "until very recently, [he] was not positive of the depth and severity of the actions of [Bard]." Opp. at 3. Under *Bowen*, however, a plaintiff need not be "positive" before his claim accrues. That much is clear from language in the *very passage* from *Bowen* Epstein cites, Opp. at 3: "[the discovery] rule prescribes as crucial the date when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or *may have been harmed* by the defendant's conduct." *Bowen* at 741 (emphasis supplied). As evidenced by his own letters, Epstein either discovered, or should have

discovered, that he had been or may have been harmed by Bard's conduct over four years before he filed his complaint.

Epstein then weakly attempts to dodge the fatal impact of his own words, calling his October, 1999 and January, 2000 letters mere "inquiries" that "qualify as suspicion, opinion, and conjecture, but never actual knowledge." Opp. at 7.  Epstein's position that his letters were no more than "inquiries" appears to have been cooked up very recently, for the sole purpose of sidestepping this fatal statute-of-limitations problem.  In his Complaint, Epstein characterizes his letters quite differently:  "Several letters were written advising [Bard personnel] that they *were using* Epstein's technology and proprietary information without permission."  Complaint at ¶ 51 (emphasis supplied).  According to Epstein's Complaint, his letters were more than the mere "inquiries" of a "confused would-be Plaintiff" – they were affirmative *assertions* that Bard *had* misappropriated Epstein's alleged trade secrets.  The letters are, as Epstein correctly noted in his Complaint, conclusive evidence that Epstein had actual knowledge of the facts giving rise to his claims over four years before he filed suit.  Though Epstein's *description* of his letters has evolved, the *content* of his letters remains the same.  They still lead ineluctably to dismissal.

In any event, even under Epstein's *new* description of his letters, his claims are time-barred.  In stating that his letters "qualify as suspicion, opinion, and conjecture[,]" Opp. at 7, Epstein concedes that, as of October, 1999, he was, at a minimum, *suspicious* that Bard had misappropriated his trade secrets.  Under *Bowen*, that is sufficient to trigger the statute of limitations, which "commences to run when a reasonably prudent person…, reacting to *any suspicious circumstances* of which he might have been aware…, should have discovered that he had been harmed[.]"  *Id*. at 742 (emphasis supplied).  Epstein admits that he was aware of circumstances he considered "suspicious."  Epstein had no choice but to make this admission –

his suspicions (and accusations, and threats) are spelled out clearly in his series of letters. Even granting Epstein the benefit of the doubt, then, as to the proper description of his letters, his claims are time-barred.

In an equally feeble attempt to negate the dispositive effect of his own letters, Epstein asserts that, because his October, 1999 letter contains the word "confusing," his claims could not possibly have accrued by that date. "Surely, a confused would be Plaintiff could not possess the requisite knowledge to file suit." Opp. at 8. Though Epstein is apparently confused about a great deal, he was not too confused to state in his letter to the President of the Bard Urological Division (BUD) on January 6, 2000 that "now … my Trade Secrets has (*sic* have) been divulged[,]" and "BUD has **30** days to respond with a significant proposal that will address this issue … or this is my last communication and we will end up in court." Exh. B, Motion to Dismiss (emphasis original). Nor was Epstein too confused to state in a letter to Bard's general counsel on the same date that "I expect BUD to settle this with out further incident or we **will** end up in court." Exh. C (emphasis original). Nor was Epstein too confused to state in a letter to a BUD attorney on the same date that "as of this letter if a reasonable offer is not presented to me within **30** days, I will move forward with legal action[,]" Exh. D., or that "[t]his letter is being copied to my attorneys [including his current attorney, Gary Lambert] and I hope for a speedy close to this issue. Otherwise this is the last communication that will come directly from me until a court decision put (*sic*) this to rest." *Id*. (all emphasis original). Indeed, a court decision must now put this to rest. This Court should dismiss Epstein's tort and 93A claims as time-barred.

Epstein's letters also destroy his argument that Bard fraudulently concealed his cause of action from him, thus tolling the statute-of-limitations for some unspecified amount of time.

- 4 -

Epstein asserts that there was an "overall scheme to impede Mr. Epstein from discovering the truth[,]" in which Bard "followed a deliberate path stymieing (*sic*) Mr. Epstein's reasonable diligence[.]" Opp. at 6. Epstein concedes that, even where there is fraudulent concealment, there is no tolling once a plaintiff has "actual knowledge of the facts" giving rise to his cause of action. *Demoulas v. Demoulas Super Markets, Inc.*, 677 N.E.2d 159, 174 (Mass. 1997) (quoted in Opp. at 6). Epstein had that knowledge in October, 1999 ("[I]t has been brought to my attention to Tigertail® is still available through Bard Urology"), exh. A; he started threatening to *sue* Bard based on that knowledge in January, 2000 ("now … my Trade Secrets has been divulged"), exh. B.

Epstein's curious claim that Bard, by failing to respond to each and every one of Epstein's spurious vituperations, somehow goaded Epstein into delaying filing suit, is not only wrong on the law, *Krasnow v. Allen*, 562 N.E.2d 1375, 1380 (Mass. App. Ct. 1990) (duty of further inquiry is on plaintiff, not defendant), it is belied by Epstein's own words. In his January, 6, 2000 letter to a BUD attorney, Epstein stated that "[u]nfortunately, BUD has … *apparently no intentions of working out this issue*." Exh. D (emphasis supplied). According to Epstein himself, then, Epstein understood over four years ago that Bard had no intention of "working out" this issue, even in light of Epstein's repeated threats of litigation. His attempt to blame Bard for his delay in filing simply does not hold water. As a result, irrespective of Epstein's erroneous "fraudulent concealment" argument, his tort and 93A claims are time-barred and should be dismissed.

## II.   EPSTEIN'S FRAUD CLAIMS LACK 9(b) PARTICULARITY

Three of Epstein's counts sound in fraud. Count VI ("Misrepresentation"), Count VII ("Negligent Misrepresentation") and Count VIII ("Fraudulent Concealment"). As such, each

must be pled with particularity under Fed. R. Civ. P. 9(b). Plaintiff concedes as much in his reply. Opp. at 9. As explained in detail at Mem. at 8-12, Epstein failed to plead any of his fraud-based claims with particularity as construed by the First Circuit in *Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1st Cir. 1997).

Epstein replies by asserting that "Bard wholly fails to illustrate how Mr. Epstein's claims fall short of compliance with the requirements of any legal standards." Opp. at 8. Bard refers Epstein and this Court to the four pages in Bard's memorandum – pages 8 through 12 – in which it does just that.

**Misrepresentation and Negligent Misrepresentation**

With respect to Count VI ("Misrepresentation"), the substance of Epstein's allegations seems to be that one of the three co-defendants (presumably Bard, although Epstein does not specify) made unspecified representations as to FDA-related matters at an unspecified place and time. Epstein fails to explain why or how any of Bard's statements in FDA filings could possibly have misled or defrauded *him*. As explained in more detail at Mem. 10, this count fails to satisfy each particularity requirement set forth in *Suna*. In that it contains the *identical* vague allegations, Count VII ("Negligent Misrepresentation") necessarily suffers the same fate as Count VI. *See* Mem. at 11.

Epstein responds with conclusions and surplusage. As to Bard's argument that neither Count VI nor Count VII pled fraud with the requisite particularity, Epstein states that "Bard's statements regarding the source of the FDA 510(k) disclosure were fraudulent." Opp. at 9. That is, Epstein merely repeats his vague assertion of fraud in conclusory fashion without specifying a single detail required by *Suna*. "Mere allegations of fraud … are too conclusional to satisfy the

particularity requirement, no matter how many times such accusations are repeated." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996).

In an odd passage, Epstein goes on to state that Counts VI and VII were pled with the requisite particularity because "[t]hese misrepresentations impaired Mr. Epstein's potential and credibility in the catheter industry[,]" and that "the actions surrounding the fraudulent transfer of Mr. Epstein's proprietary information … occurred in Massachusetts." Opp. at 10.  As to the first assertion, whether Epstein alleges he was *injured* by the alleged misrepresentations has nothing to do with whether Epstein *pled* his fraud-based claims with the requisite particularity.  As stated in *Suna*, 9(b) requires the plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id*. at 68.  Epstein's assertion that the alleged "actions surrounding the fraudulent transfer" occurred in Massachusetts has even *less* to do with the *Suna* particularity inquiry.  That assertion fails to mention a *single* representation, let alone who said it, when and where it was said, and why it was fraudulent.  Counts VI and VII should be dismissed.

**Fraudulent Concealment**

In Count VIII, Epstein claims that unspecified defendants (again, we will assume *arguendo* that he means to single out Bard), made certain misrepresentations to the FDA and fraudulently concealed the alleged theft of Epstein's trade secrets.  As explained in Mem. at 11-12, this claim lacks the particularity required under 9(b) as construed in *Suna*.  As to the alleged misrepresentations to the FDA, Epstein fails to specify the content of any alleged misrepresentation, who made it, when or where it was made or, most importantly, why anything Bard did or did not tell the FDA conceivably misled or defrauded Epstein.  As to the alleged

fraudulent concealment of the alleged theft of Epstein's trade secrets, Epstein's January 6, 2000 letters, as more fully explained in Mem. at 4-8 and *supra* at § I, demonstrate that Epstein had convinced himself several years ago that Bard had tortiously misappropriated his "trade secrets." Epstein's reply does nothing to salvage his impermissibly vague allegations. Count VIII, like Counts VI and VII, should be dismissed.

Epstein requests leave to amend his fraud-based claims in the event this Court finds they currently lack 9(b) particularity. "[L]eave to amend may be denied when the proposed amendment would be futile." *Plumley v. Southern Container, Inc.*, 125 F. Supp. 2d 595, 560 (D. Me. 2000). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *Id*. Even if Epstein amended Counts VI, VII and VIII to bring them in line with 9(b) and *Suna*, each of those claims would still fail to state a claim upon which relief could be granted because each is time-barred and, as explained *infra*, each is pre-empted. Accordingly, this Court should deny leave to amend.

**III.    EPSTEIN ADMITS THAT COUNT II LACKS AN ESSENTIAL ELEMENT**

Bard moved to dismiss Count II ("Tortious Interference With Contractual Relations") on the ground that Epstein failed to allege that Bard interfered with a *single* business relationship or contemplated contract of economic benefit. Mem. at 12-13.

Epstein's reply conclusively demonstrates that this count must be dismissed. Positing that he clearly *has* alleged that Bard interfered with a business relationship, Epstein says "it escapes Bard that a thorough application of [controlling law] clearly illustrates the existence of, at very least, an illicitly severed relationship *between Mr. Epstein and Bard*." Opp. at 12 (emphasis supplied). "Bard illicitly severed Bard's business relationship and contract *with Mr.*

*Epstein* by misappropriating Mr. Epstein's trade secrets and forwarding the secrets to Futuremed." *Id*. (emphasis supplied).

In fact, the inevitable consequence of Epstein's allegations did not "escape" Bard. Bard moved to dismiss this count precisely because the only business relationship Epstein alleges Bard interfered with was that between *Epstein and Bard*. It is black-letter law that a party cannot tortiously interfere with its own contract. "[I]n an action for intentional interference with a contract, the plaintiff must prove that (1) he had a contract *with a third party*, (2) the defendant knowingly induced the *third party* to break that contract, and (3) the plaintiff was harmed by the defendant's actions." *United Truck Leasing Corp. v. Geltman*, 551 N.E.2d 20, 21 (Mass. 1990) (emphasis supplied). *See also Schinkel v. Maxi-Holding, Inc.*, 565 N.E.2d 1219, 1225 (Mass. App. Ct. 1991) ("The fourth count seems to set out a claim for relief only against Cederberg, implicitly (and correctly) recognizing that Maxi cannot be guilty of tortious interference with its own contract."). In that Epstein's Complaint *and reply* make clear that Epstein only alleges that Bard interfered with its own (alleged) contract with Epstein, Count II should be dismissed.[1]

## IV.   COUNT X LACKS AN ESSENTIAL ELEMENT

Bard moved to dismiss Count X ("Violation of M.G.L. ch. 93A § 2 and § 11") on the ground that Epstein failed to allege that the violation occurred "primarily and substantially in Massachusetts." Mem. at 13-15; Mass. Gen. L. ch. 93A § 11. A plaintiff has no recourse under ch. 93A unless "the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 781 N.E.2d 787, 789 (Mass. 2003). Although it is true that the party asserting lack of

---

[1] In passing, Epstein mentions that "Bard's far reaching sales will surely preclude any attempt Mr. Epstein can muster toward selling catheters in the same industry." Opp. at 14. Even if this were true, it is still insufficient to plead this tort, which requires, at minimum, a "business relationship or contemplated contract of economic benefit." *ELM Medical Lab. v. RKO Gen.*, 532 N.E.2d 675, 681 (Mass. 1989) (citation omitted). By Epstein's own admission, this allegation relates vaguely to some notion of unspecified business relationships in the future.

nexus has the burden of proof, ch. 93A § 11, and that the nexus inquiry typically occurs after the trial judge makes findings of fact, *Kuwaiti Danish* at 799, this is the exceptional case in which Epstein has failed to allege *even a single fact* which colorably constitutes an allegation that the "center of gravity" of the alleged 93A violation occurred "primarily and substantially in Massachusetts." In that fact-findings would be futile, this Court can and should dismiss Count X at this stage.

As explained in detail in Mem. at 13-15, the essential premise of Epstein's 93A claim is that Bard transferred Epstein's trade secrets to Futuremed. That is unquestionably the "pivotal event" of Epstein's entire case. Nowhere in his Complaint does Epstein claim that the alleged transfer occurred in Massachusetts. He concedes that the Bard Urological Division is located in Georgia and Futuremed is located in Texas. Neither has so much as an *office* in Massachusetts. Accordingly, this claim should be dismissed.

Epstein's reply hardly salvages this count. He contends that "over a span of years, Bard acquired Mr. Epstein's trade secrets in Massachusetts[,]" and that "using time as a basis for applying the 'primarily and substantially within the Commonwealth' theory, an overwhelmingly inordinate portion of the complete transaction clearly occurred in Massachusetts." Opp. at 17. Epstein cites no authority for the proposition that "time" is the basis for applying the "primarily and substantially" test. Perhaps that is because no court has ever reached such a conclusion. As clearly set forth in *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, the relevant inquiry is whether the "pivotal *events* underlying [the] 93A claim" occurred in Massachusetts. *Id*. at 235-36 (emphasis supplied). If they did not, the 93A claim must fail, even if a "number of activities" occurred in Massachusetts as well. *Id*. Treating as true, *arguendo*, Epstein's false contention

that BUD transferred Epstein's trade secrets to Futuremed[2], the pivotal *event* underlying his 93A claim either occurred in Georgia or Texas or some other unspecified location. Epstein fails to allege that it occurred in Massachusetts. As such, his 93A claim should be dismissed.

## V.   COUNTS VI, VII AND VIII ARE PRE-EMPTED

In addition to the grounds set forth above, Bard moved to dismiss Counts VI ("Misrepresentation"), VII ("Negligent Misrepresentation") and VIII ("Fraudulent Concealment") on the ground that each is impliedly pre-empted by the Federal Food, Drug, and Cosmetic Act (FDCA), 52 Stat. 1040, as amended by the Medical Device Amendments of 1976 (MDA), 90 Stat. 539, 21 U.S.C. § 301 (1994 ed. and Supp. IV). *See* Mem. at 15-16. In *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341, 348 (2001), the Supreme Court held that "state-law fraud-on-the-FDA claims conflict with, and are therefore impliedly pre-empted by federal law." In Counts VI, VII and VIII, Epstein brings state-law tort claims for injuries he says he sustained as a result of Bard allegedly defrauding the FDA. Therefore, these claims should be dismissed under Fed. R. Crim. P. 12(b)(1) for lack of subject matter jurisdiction. *Adames v. Exec. Airlines, Inc.*, 258 F.3d 7, 16 (1st Cir. 2001) (affirming district court dismissal of pre-empted claim for lack of subject matter jurisdiction).

Epstein's reply is befuddling. Although he confidently asserts that "Counts VI, VII and VIII are *clearly* not pre-empted," Opp. at 2 (emphasis supplied), Epstein appears to be totally unclear as to what pre-emption doctrine *is*. While it is difficult to decipher Epstein's actual position, he appears to be laboring under the nonsensical notion that a state-law tort claim is not

---

[2] Epstein makes the preposterous suggestion that "without accepting the transaction wherein BUD transferred Mr. Epstein's technology to Futuremed as true, Bard cannot base dismissal on these facts. Thus, without acceptance of the transfer, Bard must fail for lack of any argumentative matter." Opp. at 16. While it is unclear whence Epstein derives his novel "failure for lack of any argumentative matter" standard, it is clear that Epstein's suggestion is absurd. Epstein appears to argue that Bard cannot move to dismiss a meritless claim based on a false accusation without first admitting that the false accusation is true. If there is such a thing as "lack of any argumentative matter," surely this is it.

pre-empted unless the *FDA* is somehow equipped to salve the plaintiff's wounds.  Thus, Epstein argues, "[i]n asserting that Mr. Epstein can be granted relief from the [FDA], Bard confuses the types of injury which can be reached by the FDA."  Opp. at 18.  "[T]he FDA is clearly not equipped to recompense a Plaintiff from whom trade secrets have been converted and filed for FDA certification."  Opp. at 19.  "[T]he injury is felt solely by Mr. Epstein and not the FDA or the general public and the FDA is clearly not equipped to provide Mr. Epstein a proper remedy."  *Id*.  And, in the most outlandish sentence of the passage, Epstein states that "the genre of regulation reached in *Buckman* can never be afforded to Mr. Epstein by the FDA as the factual basis in the instant action never lends towards fear of insufficient disclosures."  Opp. at 19-20.

Epstein's reply is simply not responsive to Bard's pre-emption argument.  In framing the issues as he does, Epstein leaves Bard nothing to rebut.  Bard relies on the pre-emption argument contained in Mem. at 15-16, which provides a sufficient basis for dismissing Counts VI, VII and VIII.

**VI.   CONCLUSION**

For the foregoing reasons, Counts II, III, IV, V, VI, VII, VIII and X of Epstein's Complaint should be dismissed.

Respectfully submitted,

/s/ Andrew Good
Andrew Good, BBO # 201240
Matthew Zisow, BBO # 658726
GOOD & CORMIER
83 Atlantic Avenue
Boston, MA 02110
Tel. (617) 523-5933
Fax (617) 523-7554

*Counsel for C.R. Bard, Inc.*