UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12297-RWZ

SCOTT M. EPSTEIN

v.

C.R. BARD, INC., FUTUREMED INTERVENTIONAL, INC., and CROSSBOW VENTURES, INC.

Memorandum of Decision

July 19, 2004

ZOBEL, D.J.

Plaintiff Scott Epstein, a designer and manufacturer of medical devices, operated SME Design Technology, Inc. ("SME Design"), which became Medical Device Labs, Inc. ("MDL"), some time after 1998. At some point,[1] plaintiff began a business relationship with C.R. Bard, Inc. ("Bard"), a developer, manufacturer and marketer of medical technology. According to the Complaint, plaintiff improved upon the design of the existing Soft Tip catheter and enabled Bard Urological Division ("BUD"), a division of Bard, to sell the catheter (marketed as the Tigertail™) at a competitive price, while making a larger profit. Pursuant to this relationship, plaintiff entered into a confidentiality agreement with Bard on December 23, 1994, concerning hydrophilic coatings. On January 27, 1995, and on January 31, 1997, plaintiff and BUD entered into two confidentiality agreements concerning stents and catheters. Plaintiff asserts that he shared his technology in confidence with the BUD Engineering, Quality, and Regulatory staff to achieve and meet

---

[1] The lengthy Complaint is remarkably devoid of dates.

regulatory guidelines.

Plaintiff further alleges that instead of notifying the Food and Drug Administration ("FDA") about changes between his catheter and the BUD Soft Tip catheter as required under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, et seq., BUD filed his data and test results internally using the "Grandfather" status for a previously approved similar device. On December 30, 2002, plaintiff e-mailed the FDA informing it of his suspicions that Bard and BUD were misappropriating his trade secrets and selling a modified product without the necessary notice.

At an unspecified date, plaintiff sought to sell or license his technology to prospective customers, including BUD, who declined and also informed him that it was discontinuing his product line. Plaintiff alleges that BUD instead disclosed his technology to FutureMed Interventional, Inc. ("FutureMed"), which then supplied the catheters to BUD, who continued to sell them as the Tigertail™. Plaintiff also alleges that FutureMed is owned by CrossBow Ventures, Inc. ("CrossBow").

On October 15, 2003, plaintiff filed a 27-page Complaint in state court against defendants Bard, FutureMed, and CrossBow, for damages on the following legal theories, listed by count: (1) breach of contract (against Bard only), (2) tortious interference with contractual relations (against Bard only), (3) misappropriation of trade secrets, (4) conversion, (5) unjust enrichment, (6) misrepresentation, (7) negligent misrepresentation, (8) fraudulent concealment, (9) breach of the implied covenant of good faith and fair dealing (against Bard only), and (10) violation of Mass. Gen. Laws ch. 93A §§ 2 and 11. Plaintiff also seeks an injunction prohibiting the defendants from designing, manufacturing,

selling, distributing and licensing products, which have been

designed, developed, and produced based on plaintiff's technology. Defendants removed the case to this Court, and now move to dismiss the Complaint.

I.   Defendant C.R. Bard's Motion to Dismiss

   A.   Time Barred Claims

Bard moves to dismiss Counts Two through Eight and Count Ten on the grounds that they are time barred and lack necessary elements. When a plaintiff cannot determine the exact time of his injury, his cause of action accrues when he knew or should have known that defendant's conduct was harming him. Szymanski v. Boston Mutual Life Insurance Co., 778 N.E.2d 16, 20 (Mass. App. Ct. 2002). Where the parties do not agree on the events triggering accrual, the relevant focus becomes the identification of events which would suggest to a "reasonably prudent person in plaintiff's position" that he had been injured, thus putting him on "inquiry notice." Id. at 20-21. "Notice here refers not to discovery of every fact necessary to prevail on the claim, but rather to discovery of the plaintiff's injury as causally connected to the defendant's negligence." Id. (quotations and citation omitted). The existence of notice of causation is a factual inquiry. Bowen v. Eli Lilly & Co., 557 N.E.2d 739, 742 (Mass. 1990).

The doctrine of fraudulent concealment (erroneously pled as a cause of action) is a tolling doctrine codified in Mass. Gen. Laws ch. 260, § 12. Stolzoff v. Waste Systems Intern., Inc., 792 N.E.2d 1031, 1039 (Mass. App. Ct. 2003). Where there is no fiduciary relationship, "the statute of limitations is tolled if the wrongdoer 'concealed the existence of a cause of action through some affirmative act done with intent to deceive.'" Id. (citation omitted).

Bard asserts that the statute of limitations began to run on October 10, 1999, the date of a letter by plaintiff to the President of C.R. Bard Urology Division[2], in which he stated:

> [I]t has been brought to my attention that Tigertail™ is still available through Bard Urology, which under the circumstances is confusing to me. We have not supplied BUD with product (sic) for about one year and therefore I have to wonder where additional inventory (sic) has come form (sic). This letter is an attempt to ascertain this information because it has been established and is well defined that the BUD Tigertail™ technology and concept is the intellectual property of SME Design. Any second source manufacture (sic) utilizing SME Design technology which includes material and process information would have to be licensed form (sic) and approved by SME Design.

(Def. Bard's Mem. Ex. A).

Plaintiff was clearly on notice that BUD was improperly using his technology since he knew that BUD continued to sell the Tigertail™ and he, the sole supplier of the product, was not supplying it to BUD. Referring to this letter, plaintiff admits as much: "From the first indicia of foul play, despite Mr. Epstein's best efforts to acquire the requisite knowledge to concretely establish his causes of action, Bard (and the several Defendants) wholly failed to answer Mr. Epstein's inquiries." (Pl.'s Opp'n at 4). Concrete establishment of a cause of action is unnecessary to put plaintiff on inquiry notice; some "indicia of foul play" suffices. Furthermore, the tolling doctrine does not apply since plaintiff has not alleged that Bard acted affirmatively to deceive him.

---

[2] Plaintiff referred to his letters to Bard in his Complaint. (Compl. at ¶ 51). "Although much of the evidence contained in the record is out-of-bounds in reviewing a 12(b)(6) dismissal, it is well-established that in reviewing the complaint, we 'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, without converting the motion into one for summary judgment.'" Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 34 (1st Cir. 2000). In any case, plaintiff does not object and also relies on the same letters referred to by defendant.

Plaintiff's claims for misappropriation of trade secrets and conversion (Counts Three and Four) have a three-year statute of limitations. <u>Stark v. Advanced Magnetics, Inc.</u>, 736 N.E.2d 434, 441 (Mass. App. Ct. 2000). Because plaintiff filed his lawsuit four years and five days after he was on inquiry notice, Counts Three and Four are time barred, as is Count Five (unjust enrichment). The statute of limitations applicable to unjust enrichment depends upon the "essential nature of plaintiff's claim." <u>Desmond v. Moffie</u>, 375 F.2d 742, 743 (1st Cir. 1967). Either the three-year tort statute of limitations or the six-year contract statute of limitations applies. <u>Id.</u> In his Complaint, plaintiff contends that "[d]efendants have been unjustly enriched by inter alia using Plaintiff's technology, trade secrets, and intellectual property." (Compl. at 19). The language of the Complaint sounds in tort and makes no mention of any contract. Applying the three-year statute of limitations, Count Five is time barred. Count Ten, alleging Chapter 93A claims, has a four-year statute of limitations. <u>Cambridge Plating Co. v. Napco, Inc.</u>, 85 F.3d 752, 761 (1st Cir. 1996). Plaintiff filed his lawsuit five days too late. Therefore, Count Ten is also dismissed.

      B.    <u>Claims Lacking Necessary Elements</u>

Bard next asserts that Counts Two, Six, and Seven, alleging tortious interference with contractual relationship, misrepresentation, and negligent misrepresentation, respectively, lack necessary elements. Tortious interference with contractual relationship requires proof that defendant intentionally, and with improper motive or means, induced a third party to break its existing contract with plaintiff, who was harmed. <u>Wright v. Shriners Hospital</u>, 589 N.E.2d 1241, 1245-1246 (Mass. 1992)(citation omitted). Nowhere in his 27 page Complaint does plaintiff assert that any defendant induced another party to break a contract with him. Plaintiff's argument that Bard itself broke a contract with him is

insufficient to sustain this claim.  Harrison v. Netcentric Corp., 744 N.E.2d 622, 632 (Mass. 2001) ("A party to the contract cannot be held liable for intentional interference.").  Count Two is dismissed.

The misrepresentation claims are based on Bard's alleged failure to notify the FDA of the differences between the BUD Soft Tip catheter and that made by plaintiff. Bard asserts that plaintiff did not specify the time, place, and content of the alleged false representation as required by Rule 9(b). Fed. R. Civ. Pro. 9(b); Lindner Dividend Fund, Inc. v. Ernst & Young, 880 F. Supp. 49, 57 (D. Mass. 1995)(quotations and citation omitted). To establish intentional misrepresentation, plaintiff must show that defendant knowingly made a false statement of material fact, for the purpose of inducing plaintiff to act thereon, and that plaintiff did reasonably rely on the statement and acted to his detriment.  John Beandette, Inc. v. Sentry Inc. A Mut. Co., 94 F. Supp. 2d 77, 126 (D. Mass 1999). Negligent misrepresentation does not require defendant's knowledge of the statement's falsity.  See Mahlert v. Nelson, 1996 WL 1186841.  "General allegations must be supported by a specific factual basis."  Lindner, 880 F. Supp. at 57.

The Complaint does not specify when BUD fraudulently filed his data with the FDA. Furthermore, no factual basis exists for plaintiff's contention that the defendants collectively made these false representations.  Finally, aside from bald assertions that such representations were made to induce his reliance on them, and that he did so to his detriment, plaintiff alleges no facts.  In his papers, plaintiff inadequately and vaguely states that the misrepresentations "impaired [his] potential and credibility in the catheter industry." (Pl.'s Opp'n at 10).  Plaintiff's claims for misrepresentation and negligent misrepresentation (Counts Six and Seven) are dismissed.  Count Eight is likewise` dismissed as it is a tolling doctrine – not a cause of action.

7

II.   Motions to Dismiss by Defendants FutureMed and CrossBow

FutureMed also moves to dismiss, correctly noting that the Complaint contains no allegations against it. The complete absence of facts against FutureMed necessitates the dismissal of all claims against it.

Because FutureMed is not liable, CrossBow cannot be held liable as its parent company. Moreover, CrossBow is not the parent of FutureMed – a fact plaintiff does not dispute. Therefore, not only is there no liability, but no grounds for any potential liability to attach.

Accordingly, Bard's Motion to Dismiss Counts Two through Eight and Count Ten is allowed; FutureMed's Motion to Dismiss all counts is allowed; and CrossBow's Motion to Dismiss all counts is allowed.

|  |  |
|---|---|
| _____ <br> DATE | /s/ Rya W. Zobel <br> RYA W. ZOBEL <br> UNITED STATES DISTRICT JUDGE |